MARTIN PURCELL v. CITY OF EAST GRAND FORKS and Others.[1]

February 11, 1904.

Nos. 13,719—(159).

**Issue of Municipal Bonds.**

    In a taxpayer's suit to enjoin the city of East Grand Forks from issuing its municipal bonds for a waterworks system upon the ground that the liability thus incurred exceeded the limits authorized by section 126, c. 8, (p. 50,) Laws 1895, *held*:

**Debt Limit.**

    1. That this city, being of less than 8,000 population, could not issue its municipal obligations, since its existing indebtedness, with the proposed bonds, exceeded ten per cent. of its property valuation at the last preceding assessment for the purpose of taxation.

**Same.**

    2. The restrictions upon the right of the people to increase the indebtedness of the city above the limit specified in section 126, supra, cannot be enlarged by a two-thirds vote of the electors.

**Submission to Vote.**

    3. The submission to the voters of the issuance of bonds as authorized in proviso 4 of section 126, supra, relates solely to cities of less than 8,000 people.

Action in the district court for Polk county to restrain defendants, City of East Grand Forks and its officers, from issuing proposed bonds of the city to the amount of $15,000 to provide for the construction of a municipal waterworks system. From an order, Grindeland, J., denying a motion for a temporary injunction, plaintiff appealed. Reversed, and remanded.

*Bronson & Margeson,* for appellant.

The only reasonable construction to place upon chapter 8 of the Laws of 1895, in consonance with the intention of the legislature and of all laws regulating the indebtedness of municipalities, is that there is, in all cases, a limitation of indebtedness. Rawls v. Doe, 23 Ala. 248; Detroit Citizens' St. Ry. Co. v. City of Detroit, 64 Fed. 626; Beck v. City of St. Paul, 87 Minn. 381.

[1]Reported in 98 N. W. 351.

The indebtedness of the city, together with the amount of the threatened bond issue, most clearly exceeds the limitations imposed by the statute; in fact, the plaintiff, by omitting the principal items of indebtedness, still shows an amount in excess of the limit imposed. 20 Am. & Eng. Enc. (2d Ed.) 1176; Law v. People, 87 Ill. 385; Tuttle v. Polk, 92 Iowa, 433; Faulkner v. City, 19 Wash. 320; Kelly v. City of Minneapolis, 63 Minn. 125; Appeal of Erie, 91 Pa. St. 398; Grant v. City, 36 Iowa, 396; Earles v. Wells, 94 Wis. 285; Tiedeman, Mun. Corp. § 351; Kiichli v. City of Minneapolis, 58 Minn. 418, 425; State v. City, 24 Mont. 521; Rice v. City, 100 Wis. 516; City v. Gamewell, 146 Ind. 466; City v. Edwards, 84 Ill. 626; Law v. People, 87 Ill. 385; Fuller v. City, 89 Ill. 282; Regents v. Auditor General, 109 Mich. 134; Re Central Park Commissioners, 50 N. Y. 493; New York v. Bridgeport, 65 Conn. 410; State v. Sullivan, 62 Minn. 283; State v. Archibald, 43 Minn. 328.

The evidence indisputably shows the nonexistence of an official newspaper during the proceedings herein, and we see no escape from the conclusion that, as between these parties, the preliminary proceedings herein are absolutely void.

*J. C. Massee, W. I. Brown,* and *G. A. E. Finlayson,* for respondents.

LOVELY, J.

This is an equitable suit by a taxpayer of East Grand Forks to enjoin that city and the other defendants, its officers, from issuing and negotiating the sale of $15,000 of its municipal bonds for a waterworks system. There was an application for a preliminary injunction, based upon allegations of the complaint, affidavits, and exhibits, which was denied. Plaintiff appeals from this order.

The material facts, as they appear from this showing, establish conclusively that the city of East Grand Forks has a population of less than eight thousand inhabitants; that the total valuation of the taxable property of the city according to the assessment for the purpose of taxation made in 1903—being the last preceding one to this suit—was the sum of $437,751, as the same was equalized by the state board. On May 2, 1902, the city council adopted an ordinance providing for the creation of a waterworks system and the issuance of coupon bonds

to provide payment therefor in the sum of $15,000. The ordinance was approved by the mayor and indorsed by the recorder on May 28, 1903. By a vote of more than two-thirds of the electors of the city the ordinance was ratified. The council, by resolution, authorized the recorder to advertise for bids and to contract for the sale of the bonds on August 8 following, whereupon this action was brought by plaintiff, an interested taxpayer, to restrain the issuance thereof.

Plaintiff claimed on the hearing below that under the showing made the issuance of the bonds should be restrained for the reason that the amount thereof, with its existing indebtedness, would exceed ten per cent. of the total value of the taxable property of the city according to the last preceding assessment for taxation. It was necessarily admitted by defendants that this limit would be exceeded by the total issue in amount authorized by the council and ratified by a vote of the electors. Hence the determinative question on this review is whether, under the statute authorizing it, the issue of the obligations of the city for the proposed waterworks must be restricted within such limit, and this depends further upon the construction to be given to the specific provisions of the appropriate provisions of chapter 8, (p. 16,) Laws 1895, which controls and regulates the corporate powers of this municipality.

Section 126, c. 8, (p. 50,) Laws 1895, under which the authority to issue these obligations must be sustained, if at all, provides, among other things, that

> "The city council shall control the property and finances of the city and shall have the power  *  *  *  to borrow money on its credit for city purposes and to issue bonds therefor," subject to several provisos:
>
> 1. In terms, "that the total indebtedness of such city except as hereinafter provided shall not thereby be made to exceed five per cent. of the total value of the taxable property of such city according to the last preceding assessment for purposes of taxation."
>
> 2. In substance, where the total indebtedness already existing exceeds five per cent. of the taxable property of the city, it may issue bonds to liquidate the same, but shall be restricted

to the issuance of future bonds until the total indebtedness shall be reduced to an amount less than five per cent. theretofore limited.

3. That "any city having a population of less than 8,000 [may incur] an indebtedness of not to exceed ten per cent. of the total value of the taxable property of such city by the issuance of bonds in the same manner."

4. "That any ordinance or resolution authorizing the issuance of bonds that would increase the bonded indebtedness to an amount exceeding five per cent. of the total value of the taxable property of the city, shall be submitted for ratification to the electors of the city at the next regular city election, or at a special election called for that purpose, the form of ballot to be used at which shall be prescribed by the city council. If two-thirds of all the electors voting upon such question shall vote in favor of the issuance of such bonds, then said ordinance or resolution shall take effect and be in force; otherwise the same shall become null and void."

Subsequent provisos of section 126 relate to the manner of submitting the vote to the people when necessary, the creation of a sinking fund, and other subjects not material to the contention of defendants, which is, briefly stated, that the terms of the fourth proviso above quoted relate to the general restriction on the right to issue bonds subject to the five per cent. limitation as well as the ten per cent. limitation in proviso 3 (applicable to cities of less than eight thousand); and, further, in pursuance of this claim, that such construction must be adopted as will permit cities organized under chapter 8, supra, to incur a bonded indebtedness in any amount if two-thirds of the voters, upon submission of the question when proposed by the council, shall approve such measure.

We are very clearly of the opinion that effective force must be given to the general limitation upon the right of cities to incur obligations above the specified limits, and all provisos of this statute authorizing municipal indebtedness should be construed in accordance with that purpose. The object in this statute, as well as of many others of similar character which have been adopted by the Legislature, is to

restrain a tendency on the part of the people of municipalities to extravagance, and leads to the conclusion that this wholesome restriction must not be ignored or disregarded by any strained interpretation of the terms and limitations of laws to secure this end which would be in violation of the spirit of such general purpose. Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328.

This view is in accordance with a very sensible and well-understood rule of statutory construction which requires reference to the provisions and exceptions in a statute to be considered in their proximate relation and connection with each other; those which are more closely connected having a more direct and intimate relation than those more remote. Again, all the provisions of a statute are to be construed with reference to the general purpose of the law, which, as above stated, we have no doubt was to restrain, rather than enlarge, the tendency to extravagance in incurring indebtedness by municipalities beyond a reasonable limit, which experience has shown to be quite as liable to be approved by the people as their representatives in the governing body.

In giving proper effect to the spirit and general purpose of section 126, supra, it would seem to be obvious that the fourth proviso therein relates solely to those cases where the ten per cent. limitation applies, viz., cities having a population of less than eight thousand people, in which not only are the council required to authorize submission of the question to the voters, but the measure must also be adopted by a vote of two-thirds of the electors to justify the issuance of the bonds. We have had very little difficulty in adopting this conclusion, which renders it unnecessary to consider the further question whether the ordinance of the city council providing for the submission was published in the official newspaper, for, conceding that it was so published, the city had no authority to incur an indebtedness in excess of the statutory limit.

It may also be noted that this case is to be distinguished from the decision in Schmitz v. Zeh, supra, page 290. In that case bonds had been issued which were in excess of the legal authority, but no objection was made to their issuance. They passed into the hands of innocent parties, and by the contract of the authorities and taxpayers were recognized in the levy and collection of taxes for the payment

of the interest as it accrued to such an extent that the municipality was estopped from questioning their validity, which distinction is pointed out in that decision. In this case the question was raised before the bonds were issued or an estoppel or equitable right could have arisen. The application for the preliminary injunction should have been granted.

The order appealed from is reversed, and cause remanded for further proceedings.