KETTLE RIVER QUARRIES COMPANY v. CITY OF EAST GRAND FORKS.[1]

November 24, 1905.

Nos. 14,482—(90).

**Municipal Corporation—Contractor's Bond.**

The failure of a city to require a bond from a contractor to pave streets under an entire agreement, void because in excess of the authorized limit of municipal indebtedness, does not render the city liable under chapter 321, p. 535, Laws 1901, for that neglect to a person furnishing materials under a subcontract. Section 9, c. 382, p. 695, Laws 1903, validating such contracts and authorizing the payment of evidences of indebtedness already issued, does not impose liability on the part of the city to such subcontractor.

Action in the district court for Polk county to recover from defendant city $3,897.20, damages sustained by plaintiff, a subcontractor, by reason of defendant's neglect to require of a contractor for street paving a bond as provided by chapter 321, Laws 1901. The case was tried before Watts, J., who found in favor of defendant on the ground ·

---

[1] Reported in 104 N. W. 1077.

that the city's contract for the work was unauthorized and void. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Edwin S. Slater* and *Willard R. Cray,* for appellant.

*F. C. Massee, G. A. E. Finlayson* and *A. A. Miller,* for respondent.

JAGGARD, J.

The facts in this case are stated by the counsel for appellant with clearness and succinctness as follows: On August 13, 1902, the city of East Grand Forks, a municipal corporation, entered into a contract with one Patrick H. Thornton to furnish material for and to pave and curb certain of its streets at a total contract price of $73,579.40. On September 3, 1902, Kettle River Quarries Company, a corporation, plaintiff and appellant herein, entered into a contract with said Thornton to furnish and to deliver at East Grand Forks stone known as "Kettle River sandstone," to be used in curbing streets of defendant city, under its contract with Thornton. Pursuant to the contract between the Quarries Company and Thornton, the former sold, and delivered to Thornton at East Grand Forks, sandstone of the kind and quality called for in his contract with the city, of the agreed price and reasonable value of $5,979.90, all of which material was used by him in curbing streets of the city, in fulfilment of the contract between the two. Thornton paid the Quarries Company on account of the purchase price of said curbing the sum of $2,395.98, and on March 7, 1904, the Quarries Company secured a judgment against him for $3,897.20, which was the unpaid portion of the purchase price, together with interest to date of judgment and costs. Thornton is insolvent, the judgment is unpaid, and plaintiff is and has been unable to collect the amount so due it. No bond was required from Thornton by the city, for the benefit of those performing labor and furnishing material for him, in the performance of his contract with the city, conditioned upon his paying for such labor and material. At the time the contract was entered into between Thornton and the city the total value of taxable property was $388,541 according to the last preceding assessment, the total indebtedness of the city was $30,000, and there was no fund in the treasury of the city nor available for the payment of improvements to be made under its contract with Thornton to exceed the sum of $6,000. Plaintiff brings this action against the city to recover damages or

loss sustained by reason of the city's neglect and failure to require a bond from Thornton as required by chapter 321, p. 535, Laws 1901. The trial court held that plaintiff could not recover because in entering into its contract with Thornton the city exceeded its power to create indebtedness. A motion for a new trial was denied, and plaintiff appeals from the order of the court denying such motion.

The contract between the city and Thornton was void because the city had no authority to incur any indebtedness in excess of ten per cent. of the total value of taxable property according to the last preceding assessment for the purpose of taxation. Chapter 8, p. 16, Laws 1895; Purcell v. City of East Grand Forks, 91 Minn. 486, 98 N. W. 351. At the time the city made this contract with Thornton the limit of indebtedness which it might incur was $38,854.10. The total indebtedness, exclusive of the amount attempted to be incurred, was $30,-000. The amount of the indebtedness created by that entire and indivisible contract was approximately $74,000. Other reasons were also assigned for its invalidity.

Plaintiff's cause of action, if it has any, rests upon the city's negligence in failing to take a bond for the protection of such materialmen as the plaintiff. It is not material whether the liability be called a neglect, a delict or a tort. If the contract had been a valid one, it is conceded that the city would have been liable (chapter 321, p. 535, Laws 1901); but its liability would not have been based upon that contract. As it was, the contract was invalid and no cause of action existed at the time of the transaction, nor at all, unless the legislature imposed such liability by section 9, c. 382, p. 695, Laws 1903. That section was quoted in full in Merchants' National Bank v. City of East Grand Forks, 94 Minn. 246, 102 N. W. 703. In that case, the court, after holding the title of the act to be within the constitutional provisions, reviewed the cases which broadly recognize the power of a state legislature to impose upon a municipal corporation the payment of certain disputed obligations. It then reviewed the issues in that case, and held that the curative act was valid as concerned its legalizing effect on both technical and nontechnical defenses interposed to the enforcement of the particular obligations, to wit, certain municipal warrants, there in litigation. It is accordingly not an authority for the elimination by that act of technical or of nontechnical defenses

generally, or in any case except where the city had issued evidences of indebtedness to defray the costs of improvements.

It may well be doubted whether the legislature had the power to impose upon a municipal corporation a liability for conduct upon which it was not originally responsible in an action in tort. It is difficult to see how an act not tortious when committed can be made wrongful by subsequent enactment. Liability in tort may be attached by ratification or adoption, where the person sought to be charged so recognizes a relation that he is made responsible thereby for the conduct of a third person, which was originally wrongful, but for which no responsibility originally attached to the person ratifying. And it is competent for a legislative enactment to adopt and create liability for conduct in behalf of the state which it could have authorized in the first instance. State v. Torinus, 26 Minn. 1, 5, 49 N. W. 259. Leaving open the question whether the legislature could have authorized the delict, certainly the rules of construction should not be strained to produce such a result. The question presented in this case is determined conclusively by the obvious construction of section 9. That section expressly validates and legalizes all undertakings and agreements and all proceedings of whatever nature had or made by the village or city with reference to such improvements, and any and all evidences of indebtedness made in connection therewith. Such village or city is thereby

> Empowered * * * to pay any such evidences of indebtedness already issued and to provide funds for the completion of any such improvement.

The language last quoted does not include, but by inference excludes, the duty of the city to pay for any neglect, delict, or tort committed by it, for which it would not be otherwise responsible. Nor does such responsibility at all follow from the mere fact that the contract has been validated. The purpose of the act in so legalizing the contract was to lay the proper foundation for and to justify its subsequent authority to pay specific indebtedness and to provide future funds. No rule of construction requires or authorizes the enlarged deduction of an intention to ratify the contract for all purposes, and to impose upon the municipality liability for all possible causes of action which might have arisen if the contract had been valid at all times. The

failure of the city to require a bond from its contractor when the contract was illegal does not, by virtue of the curative act, render the city liable for that neglect to a person furnishing materials under a subcontract.

Order affirmed.