JOSEPH BARKSDALE, Appellant, *v.* GEORGE B. ELAM et al., Appellees.

1. CONDITION, ILLEGAL: HOW IT AFFECTS A CONTRACT.—A. sold to B. two slaves, upon the condition that B. would, after A.'s death, support and maintain another slave of A.'s, as a free white person, and permit the slave to enjoy the use and benefit of her own labor; and if A.'s heirs objected to this, that B. should, nevertheless, have the two slaves.   Held, that B.'s title to the two slaves was valid, although the condition upon which they were conveyed might be illegal.

2. SAME.—If illegal conditions be annexed to a grant, the grantee's estate will not be defeated, but he will take it discharged of the condition.   See 13 S. & M. 685.

APPEAL from the Probate Court of Holmes county.   Hon. Richmond J. Brown, judge.

The appellees, George Elam and others, heirs of one Jonathan Carter, deceased, filed their petition in the Probate Court of Holmes county, against Joseph Barksdale, the appellant, the executor of the last will and testament of said Carter, in which they sought distribution of certain slaves, viz: Jane, William, Harriet, and Fanny.   Barksdale claimed Jane and William, by virtue of a purchase of them, made by him from Jonathan Carter, in his lifetime.   He relied upon a deed executed by himself and said Carter, on the 9th of February, A. D. 1853, by which the said slaves, Jane and William, and some other property, were conveyed to the said Barksdale, (the said Carter retaining possession and control during his life,) upon the condition, "that the said Barksdale is, at the death of the said Carter, to take charge of a yellow girl, nearly white, named Harriet, aged twelve years, born of the house-woman

Fanny, belonging to said Carter, and to keep the said Harriet in his house, as a free white person, and in no way to be treated as a slave, but the said Harriet is to be fed from his table, in his house; to sleep in his house, and to be clothed from the store, both fine and common; and the said Harriet shall have the full benefit of her labor, and also the full right, power, and privilege of making complaint to her guardian, B. B. Wilkes, and his wife Elizabeth Wilkes, at any and all times. Now, if the said Harriet shall marry any free white man, at any time during the life of said Barksdale, then the said Wilkes and wife, and said Barksdale, shall consult together, and if they deem it proper and right, they shall give the said Harriet a portion of the above specified property, or so much thereof as they may deem equitable and just; which portion so given, shall be managed and controlled by said Wilkes and wife, for the use and benefit of said Harriet and her offspring, and the remainder shall be the property of said Barksdale and his offspring." The deed provided, that if Barksdale fails to comply with the above conditions, he should forfeit his right to the property: and it further provided, "that should any of said Carter's heirs attempt to enslave the girl Harriet, it shall in no wise affect this deed for said Jane and William, to said Barksdale, provided he faithfully carries out the requisitions herein specified."

The Probate Court decreed that all the slaves should be sold for distribution, and Barksdale appealed.

*J. M. Dyer,* for appellant.

1. Barksdale is a *bona fide* purchaser of Jane and William, for a sufficient consideration—the support and maintenance of Harriet. That the consideration was inadequate, cannot affect the contract, if there were no fraud; and there is none pretended here. 1 Story, Eq. Jur. §§ 244, 245, note 6, and authorities there cited; 1 Parsons, Cont. 361, 362.

2. But if the conditions of the deed would not constitute Barksdale a purchaser, then it was a voluntary conveyance by Carter of his own property, which he had a right to make, and it was irrevo-

cable, as to him and his heirs. *Lisloff* v. *Hart*, 25 Miss. R. 245; *Verplank* v. *Sterry*, 12 Johns. R. 548.

3. The condition upon which the property was conveyed, was not illegal; the girl Harriet was still to remain a slave, subject to the control and management of a white person, and subject to all the law regulating slavery. The personal exemption from labor, stipulated for, was not illegal. The master is not bound by law to make his slaves labor; he may support them in idleness, if he see proper, and if so, he may stipulate for others to do the same thing. It is not to the mode and manner in which slaves shall be treated, that our laws against emancipation are directed. They are enacted for the purpose of preventing the legal *status* of the slave from being changed. This has not been done in this case.

4. Barksdale is in possession of the slaves by virtue of his contract, and if that be immoral and against public policy, his possession will not be disturbed either at the suit of Carter, or his heirs. *In pari delicto potior est conditio defendentis, et possidentis.* See 1 Story, Eq. Jur. § 29; 1 East, R. 96.

5. The stipulation in the deed, that Carter should retain possession during his life, does not make it invalid. 10 S. & M. 394.

6. The Probate Court has no jurisdiction to try the title of the slaves. 4 Cushm. 116.

*W. Brooke*, for appellee.

The petition filed in the court below by the appellees, as the heirs of Jonathan Carter, seeks distribution of certain negroes, viz. : the girls Harriet and Fanny, and Jane and her child. The appellant, as executor of said Carter, resists the application, and sets up title to Jane and child under a written contract, which is set out in the record. The court below ordered distribution of all of said negroes. The appeal is taken only so far as Jane and her child are concerned.

It is evident, from the tenor of the will of Carter, and of the contract, and the evasive statements in the answer to the petition, that the girl Harriet is the offspring of the woman Fanny, by testator, and that the object of both the will and contract is to have said girl Harriet brought up as a free woman, and ultimately

to be given in marriage to a white man. In this event, by the terms of the contract, a portion of the property conveyed to appellant is to go to said girl. Both Barksdale and Wilkes are made, or intended to be made, instruments to carry out this scheme.

This arrangement, contravening the settled policy of the State, is certainly illegal, and of course, the contract entered into for the purpose of perfecting it, is null and void. Barksdale could only lay claim to the negro Jane, by a fulfilment of his unlawful undertaking. No court certainly would lend its aid to enforce rights predicated upon immorality of the grossest and most dangerous kind—dangerous, because the example of a negress, or mulatto, brought up in the manner and style specified in said contract, would necessarily exert a most baleful influence upon the surrounding negro population. *Hinds* v. *Brazcalle,* 2 How. 843.

FISHER, J., delivered the opinion of the court.

This was a proceeding in the Probate Court of Holmes county, to compel the plaintiff in error, as executor of the last will and testament of one Jonathan Carter, deceased, to make distribution of certain slaves, alleged to be part of the estate of the testator. The executor claimed the slaves as his own, by virtue of a certain deed, executed to him by the testator in his lifetime.

This deed contains certain conditions, which, it is said, are contrary to the spirit and policy of our laws, and that the whole instrument is therefore rendered void. It may be conceded, for the sake of the argument, that every duty which the deed attempts to impose upon the donee, and every condition annexed thereto, must be treated as absolutely void, yet, under the authority of the case of *Weathersby* v. *Weathersby,* 13 S. & M. 685, the donee's title is not affected by such void conditions. He takes the property discharged from the conditions, supposing them to be void.

Decree reversed, and cause remanded.