JUDSE WXLLIAMS
delivered the opinion op the court:
Simms, the debtor, left his house, in Washington county, some 60 miles from Louisville, on the 18th December, 1859, with stock lor Mississippi and Louisiana. He expected to ship the stock on board a steamer at Louisville on the 20th December, but was unexpectedly and unavoidably detained at Louisville until the 24th December, when he embarked, with his stock, on a steamer bound down the Ohio river. He did not return to this State until about the first of the following May. From the forenoon of 21st April down to 2d May, some twenty attachments were sued out against his estate.
*286 Appellant’s attachment, for about $10,000, came to the sheriff’s hands in the forenoon of 21st April, some two or three only having been previously sued out. Several others were sued out on the same day, but after Spalding’s attachment.
Those who sued out their attachments after Spalding, and previous to 24th April, filed additional affidavits, executed new bonds, and had other attachments sued out on 26th April.
Some of these attachments were at law, others in equity, but all were transferred to the equity docket and consolidated, after which those who sued out attachments, subsequent to Spalding, filed their petition to become a party, and answered, contesting the legality of his attachment because the debtor had not been absent from the State four months when his attachment issued — absence from the State for four months being the sole ground upon which all the attachments were sued out.
Mrs. Simms, setting up a claim to some of the property attached as her separate estate, was made a party. Simms, on a rule to answer her petition, appeared in all the cases, but did not contest the attachments. The causes were referred to a commissioner to report the amount'of the respective claims, the order of attachments, and priority of liens. The commissioner, having reported the priority of liens according to the dates of the respective attachments, exceptions were filed to his report. ,
The court adjudged that the attachments could not legally be sued out until the 24th April, and that, as Spalding’s had been sued out the 21st April, it should be postponed until those sued out on and after the 24th April were satisfied; which, in effect, defeats Spalding’s claim, as Simms’ estate is inadequate to the payment of his debts. From this judgment Spalding prosecutes this appeal.
Among the causes for attachment, provided by sec. 221 Civil Code, is the one found in paragraph 2, sub-section 2, or “who has been absent therefrom (the State) four months.”
Whether, for the purpose of attachment, a party who leaves home with the intention of leaving the State, and who actually consumates this purpose, but who is unavoidably detained *287 within the State a few days, should be regarded as absent from the State, from the time he left his home, or not until he gets beyond the territorial jurisdiction of the State, is a question not free from embarrassment, and, so far as we are advised, one that has never been decided by this court.
In the case of Speed & Beattie et al vs. Gray & Co., Mss. opin., June term, 1862, this court held, where a defendant went, by railroad, through the States of Indiana and Illinois, to Cairo, from his home in Louisville, that he vims absent from the State from the day he left home; and that the fact that the boat on which he embarked at Cairo, down the Mississippi river, had touched at Columbus and Hickman, in this State, and he not even going ashore, was not such,a voluntary returning to the State as to prevent his absence from being dated from the time he left home.
The territorial limits of this State, as defined by statute, (1 Stan. Rev. Statutes, 221,) is on “the line run by Alexander and Munsell, on the parallel of latitude thirty-six degrees thirty minutes, to the middle of the channel of the Mississippi river, opposite the point on the Mississippi below New Madrid, fixed, marked, and ascertained by them as the point of intersection of said parallel of latitude and said river; thence up saidriver to the mouth of the Ohio river; thence crossing the Ohio river to the northwest bank, at low water mark; thence up the northwest bank of said river, at low water mark, to a point opposite the mouth of Big Sandy river.”
The territorial jurisdiction of the State, according to this boundary, has been recognized in the case of McFall vs. Commonwealth, (2 Met., 394.) If a defendant must actually be beyond the territorial limits of the State four months, before an attachment should issue against him, ’ for absence, there is a manifest error in this judgment. Even if he should be deemed out of the State when he got out of the Ohio river, and before he passed below the State line on the Mississippi river, yet we cannot determine, in the absence of proof, that Simms had arrived at the mouth of the Ohio river two days after he embarked at Louisville. As his deposition was taken to establish hi3 detention at, and departure from Louisville, by appel- *288 lees, the time he did arrive at the mouth of the Ohio river, and when he actually passed below the State line, on the Mississippi river, could also have been established.
Before the subsequent attaching creditors could assail Spald-ing’s attachment, they must show that they have a valid subsisting attachment and lien; for, as between the attaching creditors and Simms, he having appeared and not contesting the attachments, the same must be regarded as valid, under section 287 Civil Code.
But, in reviewing the decisions of sister States, on statutes of kindred character, we observe a strong inclination to an equitable construction, so as to secure the rights of creditors, and to make the statutes remedy the evils, as designed by the Legislature enacting them.
In the case of Moore et al vs. Holt, (10 Grat., 289,) the appellate court of Virginia said “it might be held, upon an equitable construction of the statute, that where a debtor has actually left his usual place of abode, and set off for a distant State, with the intention not to return to his residence, but in future to reside out of the State, an attachment sued out after his departure might be sustained, although it chanced he had not actually passed the State line at the time subpoena issued.” As it was determined in this case that the debtor had actually left the State at the time of suing the attachment, it was not a necessary question to be decided; but, as the court actually so decided in the subsequent case of Clarke vs. Ward et al, (12 Grat., 448,) this may now be regarded as authoritative in that State.
In this latter case, the attachment was sued out against Henry P. Ward, to attach his effects as a non-resident, between the hours of 10 and 11 o’clock, A. M., 28th June, 1853. Henry P. Ward had been for some time a resident of Winchester, Virginia, but had left about 9 o’clock, A. M., of 28th June, upon the Winchester and Potomac railroad, for Philadelphia, with the intention of residing there. That, on reaching Harper’s Ferry, Virginia, he remained there until between 2 and 3 o’clock, P. M., of 28th June, when he took the cars for Baltimore, intending to go directly to Philadelphia. The *289 court held him a non-resident, within the meaning of the statute, from the time he left Winchester.
Without intending to approve in its full length and breadth, we quote a very strong case of equitable construction,decided by the appellate court of South Carolina. Sloan vs. Bangs & Co., (10 Rich., 15.) This was a domestic attachment, and its . validity depended on some oí the defendants being within the State and attempting to remove their property at the timé of suing out the attachment. Four of the five partners had been out of the State some months, but Mather, the other partner, was in Anderson, S. C., until within a few days before the issuing of the attachment. He left, professing an intention to return in a few days, leaving his baggage in the room of the hotel where he boarded. On the day the attachment bears date, he was in Athens, Georgia; but, at the time of suing out the attachment, the goods of the firm were being removed. The attachment was sustained.
The obstructions to creditors in the 'service of their process, for four months, and the delay in the obtention of their judgments, were the evils intended to be remedied by the Legislature. In these days of steamboat and railroad travel, the creditor may be, and generally would be, as effectually obstructed in the service of his process, from the day the debtor leaves home, as by his leaving the territorial limits of the State; and, although the debtor might be liable to delay by unavoidable and unexpected casualties, yet this would rarely,, if ever, be£of any practicable advantage to the creditor in getting his process served.
Where-the debtor leaves his home, with the intention of going®out of the State, and does consummate this purpose, and is absent from his home, pursuant to such intention, for the period of four months, we think this should be regarded as am absence from the State, within the meaning of the Code and the intention of the Legislature, notwithstanding some un-looked for casualty may have delayed Him a. few days from, passing beyond the territorial boundary of the State.
*290 It follows that priority should have been given to the attaching creditors, according to the time when their respective attachments went into the sheriff’s hands.
The affidavit of Spalding substantially complies with section 222 Civil Code, and is not liable to the objection urged against it.
Wherefore, the judgment of the circuit court is reversed, and the cause remanded for further proceedings in conformity to this opinion.