[No. 11762.    Department One.    April 25, 1914.]

THE STATE OF WASHINGTON, *on the Relation of E. R. Lindsey, Appellant,* v. GLENN B. DERBYSHIRE, *as Clerk of the Superior Court, etc., Respondent.*[1]

STATUTES—TITLES AND SUBJECTS. The title of an act providing for the appointment of official court reporters, prescribing their duties, and providing for their compensation, is sufficiently broad to embrace a provision requiring the payment of fees on the filing of appearances, to be taxed as stenographer's costs.

APPEAL—REVIEW—QUESTIONS CONSIDERED. The refusal of a clerk of court to file a complaint until the stenographer's fee of $1 is paid, as required by 3 Rem. & Bal. Code, § 42-1 *et seq.*, does not raise any question as to the validity of that portion of the act relating to the use of the stenographer's transcript as evidence.

STATUTES—CONSTITUTIONALITY—PARTIAL INVALIDITY. The invalidity of that portion of the act providing for appointment of official court reporters which provides for the use of their transcript as evidence does not affect the validity of the balance of the act.

TAXATION—UNIFORMITY—COURT FEES. 3 Rem. & Bal. Code, § 42-4, providing for the payment of a fee upon filing an appearance, to be taxed as stenographer's costs, does not violate Const., art. 7, §§ 1, 2, and 9, guaranteeing a uniform and equal rate of taxation; the fee not being a tax or the act a revenue act.

CONSTITUTIONAL LAW—SPECIAL PRIVILEGES. The act, 3 Rem. & Bal. Code, § 42-1 *et seq.* (omitting the last section), classifying judicial districts with reference to the population and providing for the appointment of official court reporters, does not grant special privileges, in violation of Const., art. 2, § 28, subd. 6, and art. 1, § 12, where the act is made applicable only to all judicial districts having a population of over 30,000; since the classification is reasonable and within the discretion of the legislature.

SAME—CLASS LEGISLATION. The act, 3 Rem. & Bal. Code, § 42-1 *et seq.*, (omitting the last section), providing for official court reporters in judicial districts of over 30,000 inhabitants, does not violate Const., art. 11, §§ 4 and 5, guaranteeing uniform laws for county government, as the act has no relation to counties.

SAME—EQUAL PROTECTION OF THE LAWS. The act, 3 Rem. & Bal. Code, § 42-1 *et seq.* (omitting the last section), providing for official

[1]Reported in 140 Pac. 540.

court reporters in judicial districts of over 30,000 inhabitants, does not deny to citizens the equal protection of the laws in contravention of the 14th amendment of the Federal constitution.

APPEAL—REVIEW—QUESTIONS CONSIDERED— STATUTES — CONSTITUTIONALITY—PARTIAL INVALIDITY. Whether 3 Rem. & Bal. Code, § 42-13, excepting judicial districts having a population of over 200,000 inhabitants from the operation of the act (Id'., § 42-1 *et seq.*), providing for official court reporters, violates any constitutional provision will not be determined in an action in which such a district is not concerned, unless it can be found that the section was so inseparably connected with the balance of the act that the act would not have been passed without it; since its invalidity would not affect the validity of the balance of the act and would be a moot question.

SAME — STATUTES — CONSTITUTIONALITY — PARTIAL INVALIDITY. 3 Rem. & Bal. Code, § 42-13, excepting judicial districts having a population of over 200,000 from the operation of the act for the appointment of court reporters in judicial districts having over 30,000 inhabitants, is not so inseparably connected with the balance of the act that the act would not have been passed without it; hence the invalidity of such section would not affect the validity of the balance of the act.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered December 2, 1913, dismissing an action for a writ of mandamus, upon a hearing before the court. Affirmed.

*Codd, Hutchinson & Codd,* for appellant.

*Cannon, Ferris & Swan, Geo. H. Crandall,* and *Ira Honefenger,* for respondent.

ELLIS, J.—This is an appeal by the relator from an order of the superior court for Spokane county sitting *en banc*, refusing a peremptory writ of mandate to compel the defendant, as clerk of the court, to file a complaint in a civil action, tendered for filing by the relator, with the $4 filing fee prescribed by Rem. & Bal. Code, § 497 (P. C. 179 § 1), but without tender of the additional $1, required by chapter 126, Laws of 1913, p. 386 *et seq.* (3 Rem. & Bal. Code, § 42-1 *et seq.*). The act is entitled:

"An act providing for the appointment of official court reporters in the state of Washington, prescribing their duties, oath of office, and qualifications, and providing for their compensation and the manner of their appointment."

The provisions of the act may be condensed as follows: Section 1 (Id., § 42-1) makes it the duty of each superior court judge, in counties or judicial districts having a population of over 30,000, to appoint an official court stenographer, prescribes the standard of qualifications for eligibility, provides for removal for incompetency, misconduct or neglect of duty and fixes the official bond of the person so appointed.

Section 2 (Id., § 42-2) provides for the taking of accurate shorthand notes of the testimony, exceptions and all other oral proceedings in each cause by such stenographer upon request of either party or upon direction of the presiding judge, of his own motion, and for the filing of such notes in the office of the clerk of the trial court.

Section 3 (Id., § 42-3) provides for payment of the official reporter at the rate of $10 per diem of actual attendance, pursuant to direction of the court, out of the county treasury as other expenses of the court are paid.

Section 4 declares:

"In each civil action hereafter commenced the sum of one dollar ($1) shall be paid by the plaintiff at the time of the filing of the complaint to the clerk of the court, and at the time of the appearance of the defendant, or any defendant appearing separately, there shall be paid in to the clerk of the court one dollar ($1), and these sums so paid shall be taxed as costs in the case, and collected from the unsuccessful party in said action, and shall be known as stenographers' costs, and shall be paid by the clerk of said court into the county treasury of the county in which said action is commenced." 3 Rem. & Bal. Code, § 42-4.

Section 5 (Id., § 42-5) provides that, on request of the court or of either party or of his attorney, the official reporter shall make an accurate transcript of the testimony and

other proceedings, which, when certified as provided, shall be filed with the clerk for the use of the court or either party, and prescribes fees of fifteen cents per folio for the original, and five cents per folio for carbon copies of such transcripts, to be taxed as other costs, and closes with the proviso:

"That when the defendant in any criminal cause shall present to the judge presiding satisfactory proof, by affidavit or otherwise, that he is unable to pay for such transcript, the presiding judge, if in his opinion justice will thereby be promoted, may order said transcript to be made by the official reporter, in which case the official reporter shall be paid for preparing said transcript ten cents per folio for the original copy and five cents per folio for each carbon copy ordered at the same time as the original or made at the same time as the original, which transcript fee shall be paid in like manner as the per diem fees are paid as specified in section three of this act."

Section 6 (Id., § 42-6) provides that the report of the official reporter, when certified as provided, shall be *prima facie* a correct statement of such testimony or other oral proceedings, and may thereafter, in any civil cause, be read in evidence as competent testimony upon proof that the witness who gave it is then dead or without the jurisdiction of the court, subject to all objections as though the witness were present and testifying in person.

Section 7 provides for the certification of the transcript of the notes of an official reporter after he has ceased to be such. Section 8 provides for the appointment of a reporter *pro tem* in the absence or inability of the official reporter to act. Section 9 makes the official reporter the amanuensis to the court under certain conditions, except in counties of the first class. Section 10 insures the use of the files by the official reporters or reporters *pro tem*, on giving the clerk a receipt therefor. Section 11 provides that supplies for reporting criminal cases shall be furnished by the county, and that such supplies in all other cases shall be furnished by the stenographer. Section 12 provides for the substitution, on request of either party,

of another reporter from the same or another judicial district to report a given action.   Section 13 declares: "This act shall not apply to any county having a population of two hundred thousand, or over."   3 Rem. & Bal. Code, § 42-13. It is admitted that Spokane county constitutes a judicial district and has a population of over 30,000 and less than 200,000.

The appellant contends that the act is void for the following reasons: (1) that it embraces subjects not germane to that expressed in its title, thus impinging § 19 of art. 2 of the state constitution, which provides that no bill shall embrace more than one subject, and that shall be expressed in the title; (2) that the act is, in effect, a taxing act, impinging §§ 1, 2, and 9, of art. 7, of the state constitution, which provide, respectively, for taxation of property in proportion to value, for taxation upon a uniform and equal rate, and that taxation for corporate purposes by municipalities shall be uniform with respect to persons and property; (3) that the act makes an arbitrary classification of the counties of the state, thus impinging paragraph 6, of § 28, of art. 2, of the state constitution, which prohibits the legislature from enacting any private or special laws for granting corporate powers or privileges, and § 12, of art. 1, prohibiting the granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations; (4) that the act is violative of § 4, art. 11 of the state constitution, guaranteeing uniform laws for county government, and § 5 of the same article, prescribing uniform laws for the election of county and township officers; (5) that the act denies to the citizens of the state equal protection of the laws, contravening the first section of the 14th amendment to the Federal constitution.

I.   The appellant argues that the provision in § 4 of the act for an additional filing fee of $1 invalidates the act, urging that this is a matter in no way germane to the sub-

ject expressed in the title.  The mention of a given subject in the title is notice of all things germane to that subject in the act.  We have so held in a multitude of cases.

"This court has often held that the title of an act, in order to comply with the constitutional provisions above quoted, need not be an index to the contents of the act; that the purpose of the title is to call attention to the subject-matter of the act so that anyone reading it may know what matter is being legislated upon, and it is sufficient when it is broad enough to accomplish that purpose.  For the various provisions constituting the act, the body of the act must be consulted, the title being neither expected nor required to give details.  *State v. Scott*, 32 Wash. 279, 73 Pac. 365; *State v. Fraternal Knights & Ladies*, 35 Wash. 338, 77 Pac. 500; *Weed v. Goodwin*, 36 Wash. 31, 78 Pac. 36; *State ex rel. Osborne, Tremper & Co. v. Nichols*, 38 Wash. 309, 80 Pac. 462; *State ex rel. Zenner v. Graham*, 34 Wash. 81, 74 Pac. 1058; *Shortall v. Puget Sound Bridge & Dredging Co.*, 45 Wash. 290, 88 Pac. 212; *State v. Winsor, ante* p. 407, 97 Pac. 446."  *State ex rel. Zent v. Nichols*, 50 Wash. 508, 97 Pac. 728.

See, also, *State v. Hall*, 24 Wash. 255, 64 Pac. 153; *Seattle Nat. Bank v. Ally*, 66 Wash. 610, 120 Pac. 94; *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *Hambach v. Ward*, 69 Wash. 351, 125 Pac. 140; *Sorenson v. Kittitas Reclamation Dist.*, 70 Wash. 528, 127 Pac. 102.  The title here in question expressly indicates that the act includes provisions for the appointment, duties, and qualifications of official court reporters, and contains provision for their compensation.  Clearly, the act is intended to cover the whole subject of official reporters, and the title so indicates.  It would seem that no more than a bare statement of the fact should be necessary to demonstrate that any provision for their compensation, whether by fees, legislative appropriation or otherwise, is germane to a title expressly stating that the act contains matter "providing for their compensation."  A thing so self-evident cannot be further clarified by argument, or reinforced by citation of precedent.

It is also contended that §§ 6 and 7 of the act relate to perpetuation of testimony, and that there is nothing in the title of the act to which these matters are germane. In so far as these sections relate to the duties of the official reporter or the certification of the transcript of his notes, they are clearly germane to the title. The provisions for the use of the transcript present a much closer question; but, as we view the act, that question is not before us. In the first place, these particular sections are not involved in this appeal. *Hammer v. State*, 173 Ind. 199, 89 N. E. 850, 140 Am. St. 248, 24 L. R. A. (N. S.) 795. The respondent, so far as the record shows, did not refuse to file the complaint because of either of these provisions, but simply because of the appellant's failure to pay the fee prescribed by § 4 of the act. In the second place, even if we concede that §§ 6 and 7 are not germane to anything in the title, a point which we refrain from passing upon, the concession would not affect the result. These sections are not essential to the integrity of the act as a whole, and their elimination would not defeat the main purpose of the act. They are distinct and severable provisions. Where unconstitutional provisions are thus severable, it is the established law of this state that their unconstitutionality will not render the remainder of the act unconstitutional. *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 621, 102 Am. St. 885, 65 L. R. A. 336; *State v. Merchant*, 48 Wash. 69, 92 Pac. 890; *Gantenbein v. Pasco*, 71 Wash. 635, 129 Pac. 374, 131 Pac. 461.

II.   We find no merit in the claim that the act runs counter to §§ 1, 2 and 9, of art. 7, of the state constitution, guaranteeing a uniform and equal rate of taxation. The act is not, in any just sense, a revenue act. The fee prescribed is not a tax. It is a fee having the same direct relation to the future service to be performed by the official reporter that the fee of $4, provided for in Rem. & Bal. Code, § 497 (P. C. 179 § 1) has to services to be performed by the clerk. It is not a graduated tax based upon the value of the property

or the amount of money involved in the litigation, as was the law of 1903, prescribing a sliding scale of fees based upon the value of the estates in probate cases, which was held a disguised property tax in *State ex rel. Nettleton v. Case*, 39 Wash. 177, 81 Pac. 554, 109 Am. St. 874, 1 L. R. A. (N. S.) 152. An examination of that case makes the distinction here indicated too plain to require further comment. *State ex rel. Bell v. Frazier*, 36 Ore. 178, 59 Pac. 5.

III. Eliminating the last section of the act, which we shall presently consider, the act does not make an arbitrary classification repugnant to the inhibition of the constitution against laws granting special corporate powers or privileges, or granting special privileges to persons or corporations, other than municipal. Appellant's argument proceeds upon the theory that the classification is one of counties; that San Juan county and Skagit county, each having a population of less than 30,000, together form a single judicial district of 30,000 inhabitants, are subject to the operation of the act, and are thus placed in a different class from all other counties of the state having a population of less than 30,000. The vice of this argument lies in the mistaken assumption that the classification is a classification of counties *as such*. It is essentially a classification of judicial districts, and not of counties except as they coincide with or go to make up the judicial districts of the state. Eliminating the 13th section, the act applies to every judicial district having a population of over 30,000, and to no judicial district having a less population. Viewed, then, as a classification by population, the act is uniform in its application, and must remain so, since there is nothing in the act limiting its operation only to judicial districts now having a population of 30,000 or over. It must be construed as applying to every judicial district if, and when, it hereafter acquires that population, though now having less.

So viewed, is the classification by population a valid classification? Classification of cities, counties, and other legal

subdivisions of states, upon the basis of population have been almost universally upheld by the courts, both state and Federal, when population bears any reasonable relation to the purpose and subject-matter of the given legislation. According to the great weight of authority, no legislation is obnoxious to the inhibtion against class legislation when its provisions apply alike to all persons similarly situated. To be valid, it need not apply to persons not similarly situated. Persons are not similarly situated if there is any reasonable difference in their relation to the purposes of the legislation. Wherever such a difference can be found, as related to population, the question whether it shall be made the basis of classification is one of legislative discretion.

"But it is urged that no reason has been assigned for limiting the operation of the act to counties 'having a population of not less than 70,000 and more than 90,000' and thus necessarily excluding the counties of Davidson and Shelby, each having a population, according to the Federal census, largely in excess of 90,000. To this objection, it may be said as to Davidson, that the legislature may have found as a reason for its exclusion, that it was covered by turnpike built and controlled by private chartered companies, and in the matter of Shelby that the public has already perfected a network of good roads, under a system entirely satisfactory, But while the courts frequently find and assign reasons for legislative classification, yet it is by no means uniformly so. And it does not follow, because the reason for the classification is not disclosed in the face of the act, that it is necessarily without reason and capricious. Reasons eminently wise and provident might control the law-making body which do not appear upon the face of a statute, and for the courts to strike it down, because not readily perceptible might well be criticised as an act of judicial usurpation. Nor is there any abdication of constitutional duty or responsibility in this action. The true question in each case is, is the classification capricious, unreasonable, or arbitrary?" *Condon v. Maloney*, 108 Tenn. 82, 65 S. W. 871, 874.

See, also, *State ex rel. Bell v. Frazier, supra; McCarter v. McKelvey*, 78 N. J. L. 3, 74 Atl. 316, 138 Am. St. 583;

*Lommen v. Minneapolis Gaslight Co.*, 65 Minn. 196, 68 N.
W. 53, 60 Am. St. 450, 33 L. R. A. 437; *Lloyd v. Smith*,
176 Pa. St. 213, 35 Atl. 199; *Cook v. State*, 90 Tenn. 407,
16 S. W. 471, 13 L. R. A. 183; *Eckerson v. Des Moines*,
137 Iowa 452, 115 N. W. 177; *Pierce v. Kimball*, 9 Greenl.
(Me.) 54, 23 Am. Dec. 537; *State ex rel. Hunt v. Tausick*,
64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802; 1
Lewis' Sutherland, Statutory Construction (2d ed.), § 217.

If, therefore, there can be found any sane, reasonable
ground for a distinction between judicial districts having
less than 30,000 inhabitants and those having more than
that number, in their relation to the purposes of the act and
its practical application, we have no warrant for saying that
the classification so made is arbitrary. Viewed in the light
of these general principles, it is clear that there is such a dis-
tinction between districts of a larger population and dis-
tricts of a smaller population in their relation to the pur-
poses and practical application of the act here in question.
Districts of the smaller population would necessarily be
those rural in their character, not including any populous
cities. In such districts, there is, of course, and will always
be, comparatively little litigation. The fees provided by the
act, as the legislature may well have concluded, might not,
in such districts, provide a fund sufficient to meet the pur-
poses of the act. There is thus a distinct relation between
the population of a given district and the law in question.
Where the exact line between the larger and the smaller pop-
ulations should be drawn is necessarily a matter of legislative
discretion. This is manifest, since populations too small to
meet the purposes of the act and populations sufficiently
large to meet these purposes would necessarily merge into
each other at some point. That exact point can, of course,
never be ascertained, yet the line must necessarily be drawn
somewhere, and the determination of that point by the legis-
lature will not be disturbed. On both reason and authority,
we hold that the classification of the judicial districts of the

state in two classes, those having a population of over 30,-
000 and those having a population of under 30,000 is not, in
its relation to the purposes of the act, so illusory and unsub-
stantial as to make the classification unnatural, arbitrary
and capricious.

IV.   Nor do we find the law contrary to the provisions of
§§ 4 and 5, art. 11 of the constitution, guaranteeing uni-
form laws for county government and township organiza-
tion, and uniform laws for the election of county and town-
ship officers.   The act in question has nothing whatever to
do either with county government or with county officers.   It
is a law relating to judicial districts ; not to counties as such.
It has not even the remotest relation to county or township
organization or government, or to the election of county or
township officers.

V.   Whether the act in question is obnoxious to the first
section of the 14th amendment of the constitution of the
United States is a question which concerns the power of the
state government in its relation to the Federal government.
This amendment was never intended to prevent the different
states of the Union from classifying their citizens for the pur-
poses of legislation or judicial administration wherever that
classification is based upon any real distinction in its rela-
tion to the purposes of the law.   This amendment contem-
plates not only persons, but classes of persons.   It has no
application to local or municipal laws or regulations that do
not injuriously affect or discriminate between persons or
classes of persons within the places, municipalities, or juris-
dictions for which such regulations are made.   If every per-
son residing or being within such subdivision, municipality,
or jurisdiction is accorded the equal protection of the laws
there prevailing, there is no violation of the inhibition of the
Federal constitution.   This is the settled law, as declared by
the supreme court of the United States, and, the question
being a Federal question, the decision of that court is final.

The principle here involved was passed upon by that court

in the case of *Missouri v. Lewis*, 101 U. S. 22. In that case, mandamus was sought to compel the St. Louis court of appeals to grant an appeal from a judgment of that court to the supreme court of Missouri. By the constitution and laws of Missouri, an appeal lay to the supreme court of that state from any final judgment or decree of any circuit court except those in certain named counties, and the city of St. Louis, for which counties and city there was established a separate court of appeals, having exclusive jurisdiction of appeals from, and writs of error to, the circuit courts of those counties. From this court of appeals, an appeal lay to the supreme court only in certain cases, but similar cases arising in the circuit court of any other county than those above mentioned and the city of St. Louis would be appealable directly to the supreme court. It was contended that this judicial system was in conflict with the fourteenth amendment of the Federal constitution in that it denied to suitors in the courts of St. Louis and the counties named the equal protection of the laws. The supreme court of the United States, rejecting this contention, said:

"If this position is correct, the Fourteenth Amendment has a much more far-reaching effect than has been supposed. It would render invalid all limitations of jurisdiction based on the amount or character of the demand. A party having a claim for only five dollars could with equal propriety complain that he is deprived of a right enjoyed by other citizens, because he cannot prosecute it in the superior courts; and another might equally complain that he cannot bring a suit for real estate in a justice's court, where the expense is small and the proceedings are expeditious. There is no difference in principle between such discriminations as these in the jurisdictions of courts and that which the plaintiff in error complains of in the present case.

"If, however, we take into view the general objects and purposes of the Fourteenth Amendment, we shall find no reasonable ground for giving it any such application. These are to extend United States citizenship to all natives and naturalized persons, and to prohibit the state from abridg-

ing their privileges or immunities, and from depriving any person of life, liberty, or property without due process of law, and from denying to any person within their jurisdiction the equal protection of the laws. It contemplates persons and classes of persons. It has not respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made . . . The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. Each state has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts, one system for one portion of its territory, and another system for another portion . . . If every person residing or being in either portion of the state should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances."

See, also, *Hayes v. Missouri*, 120 U. S. 68; *Magoun v. Illinois Trust & Sav. Bank*, 170 U. S. 283; *Williams v. Eggleston*, 170 U. S. 304.

We are constrained to hold that the act in question, exclusive of the last section, does not violate either the letter or the spirit of any provision of the state or Federal constitutions in its relation to the question here presented.

But it is urged that the last section is an additional classification by population, founded upon no reasonable distinction in its relation to the purpose or practical operation of the law. We do not so read this section. It is not a classification, but a limitation on the general classification already

made in the first section of the act. If we were called upon to pass upon its constitutionality, we might find difficulty in sustaining this limitation. It might be difficult to find any sound distinction between judicial districts of over 200,000 in population and those under that population, having any reasonable relation to the general purposes or practical application of the act. But, unless the other provisions of the act and this limitation or saving clause are so palpably dependent upon each other, so intimately connected in meaning and so essentially and inseparably connected in substance, that it cannot be presumed that the legislature would have passed the one without the other, then the act must stand, even if the limitation fall. In that event, the constitutionality of this last clause is a moot question so far as this case is concerned, since it does not affect Spokane county either as a county or as a judicial district. No court will gratuitously pass upon a constitutional question or decide a statute or any part of it invalid.

"In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it and when consequently a decision upon such question will be unavoidable." Cooley, Constitutional Limitations (6th ed.), p. 196.

It is, therefore, incumbent upon us first to determine whether the body of the act and the limiting clause are so inseparably connected in purpose and substance that the one cannot stand without the other. It is plain that the act is a complete act, perfectly capable of feasible operation without the aid of anything found in the last section. The question is thus reduced to this: Assuming the last section invalid, would the legislature have passed the act without that section had its attention been directed to the illegality of that

section? In other words, are we justified in assuming that the legislature knowingly would have sacrificed the act entirely to the limitation contained in the last section? Obviously, the question being one of motive, no sure and certain rule can be laid down as applicable in all such cases. Judge Cooley, as we believe, formulated a rule as nearly exact as any that can be devised. It is this:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed that the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."

Cooley, Constitutional Limitations (6th ed.), pp. 210, 211, 212.

It is too obvious for doubt that the dominant motive of the act was to remove, so far as possible, the court reporter from private influence by making him independent of private employment. On this motive, there can be no question that a majority of both branches of the legislature fully agreed. This motive is as palpably sane and just, and the act is as palpably feasible of application, to judicial districts of 200,000 or more population as to those of less than that number. Since the legislature must be presumed to have been agreed upon this prevailing wholesome motive, applicable as well without the limitation as with it, and since it is thus apparent from the act itself that influences were brought to bear at the last moment, inducing the adoption of the limitation in the last section, else it would have been included as an exception in the first section itself, are we justified in assuming that, had the legislature been then advised that the limitation was unconstitutional (assuming that it is unconstitutional), it would not have refused to sacrifice the entire act to this afterthought? We think not, since so to assume would be to ascribe unworthy motives to the legislative body. The question is a close one, but we believe, in the light of the act itself, we are justified in assuming that the legislature, under the circumstances supposed, would have adhered to the dominant purpose of the act, and passed it without the limitation had it then been advised that the limitation would probably or possibly defeat that dominant purpose. In this, we are not without the authority of precedent. The legislature of Iowa passed a law prohibiting the manufacture and sale of intoxicants in that state. A distinct section of the act provided for a submission of the question to the voters of that state and for an official statement of the result, and provided that:

"If it shall appear from such official statement, that a majority of the votes cast as aforesaid upon said question

of prohibition, shall be for the prohibitory liquor law, then this act shall take effect on the first day of July, A. D. 1855;"

but provided that the portions of the act relating to the election should go into effect immediately on publication of the act. The court held the section providing for the submission to the people void as an unconstitutional delegation of the legislative function, but sustained the remainder of the act. The court said:

"This leads us to the next step: which is, whether the whole act, or the eighteenth section only, is invalid. It is assumed, for the present, that the matter was submitted to the people in the largest and broadest sense. This is unconstitutional and void. But an act void in part is not necessarily void for ·the whole. If sufficient remains to effect its object, without the aid of the invalid portion, the latter only shall be rejected, and the former shall stand. This doctrine is clearly maintained in the Massachusetts cases. *Fisher v. McGirr* and other cases, 1 Gray 1; 6 How. (Miss.) 625; *State v. Cox*, 3 Eng. (Ark.) 437; *Commonwealth v. Kimball*, 24 Pick. 361; *Morris v. Boston*, 4 Met. 288; *Clark v. Ellis*, 2 Blackford 10. Now, the prohibitory act of Iowa is a complete act in all its parts, without the eighteenth section, submitting it to the people. No part depends, for its efficacy or practicability, on that section. It can be carried into effect as well without it, as with it. That section relates to nothing but the vote, the returns, publication of the result and like matters. Testing this act, then, by the same rules which are applied to others, we see no reason why the whole act should be declared unconstitutional and void. It was not the vote of the people which was unconstitutional, but it was the submission to the people; and that part of the act was and is invalid, if it submitted the question whether it should be the law or not; and the vote was, to a legal intent, nugatory. It effected nothing." *Santo v. State*, 2 Iowa 165, 205, 63 Am. Dec. 487.

The court seems to have argued that the submission to the people was not whether the act should become a law or not, but only whether it should take effect. This, however, seems

to us a distinction without a difference.   The decision, in its
net result, gives clear support to the views which we have ex-
pressed on the statute before us.   The decision in *Santo v.
State, supra,* so far as we have been able to learn, has never
been overruled, but was reaffirmed in *Weir v. Cram,* 37 Iowa
649, as applied to the validity of a law restraining stock
from running at large.   The last section of that law required
a submission to a vote of the people of each county to de-
termine whether the law should be in force in such county.
The court held the submission clause invalid, and, referring
to *Santo v. State, supra,* said:

"The sole difference between that act and the one under
consideration is in the extent of the popular vote by which
the statutes are to become operative.   In the first instance,
the vote of the people of the whole state adopted or rejected
the law; in the last, it may be adopted or rejected in the
separate counties by the vote of the electors thereof.   The
principles involved in each case are the same—the law de-
pends in each instance upon a popular vote for validity.
Following *Santo v. State,* which has been too long acquiesced
in and too often approved by this court to be now questioned,
we hold that the act of 1868, chapter 144, is of force with-
out regard to the vote which it provides shall be taken to de-
termine the question of its adoption by the people."

The supreme court of Indiana has decided the question
both ways.   In *Maize v. State,* 4 Ind. 342, that court held
that a liquor license law, complete in itself, without the part
relating to a township vote for its adoption, which was held
invalid, was the law of the state, with that part stricken out.
The same court, in *Meshmeier v. State,* 11 Ind. 482, over-
ruled *Maize v. State, supra,* apparently without necessity,
but by a divided court.   In *People ex rel. Fowler v. Bull,* 46
N. Y. 57, 7 Am. Rep. 302, the court of appeals of that state
held that an act fixing the time of election a year later than
that formerly fixed by statute, and extending the term of
office of the former incumbent one year was valid as to the
first provision, though the last provision was held uncon-

stitutional.   It would seem that the court, in that case, went much further in sustaining the constitutional part of the law, as separable from the unconstitutional, than we are required to go in the case before us.   The supreme judicial court of New Hampshire lays down the rule which we here invoke in the following broad terms:

"An act may be in part beyond legislative authority, and within it for the residue; and if the act is capable of being administered in the parts which are within the power of the legislature to enact, it will so far be valid: *Fisher v. McGirr*, 1 Gray 1; *State v. Wheeler*, 25 Conn. 290; *Santo v. The State*, 2 Clarke, (Iowa), 165." *East Kingston v. Towle*, 48 N. H. 57, 97 Am. Dec. 575, 585.

Under the rule thus broadly stated, there can be no question but that the act here involved can be administered without regard to the last section, and should, therefore, be held valid without regard to that section.   It may be objected that, without the limiting clause, this act extends to at least one judicial district to which it would not otherwise extend, and that, therefore, to that extent, to hold the act valid, disregarding the limitation, would be judicial legislation. This argument, however, is not sound, if the court is ever permitted, in any case, to indulge the probable intention of the legislature to sustain the validity of any act, where a separable provision is unconstitutional.

"If the legislative purpose as expressed in the valid portions of the act can be accomplished, independently of the unconstitutional portion, and, considering the entire act, it cannot be said that the legislature would not have passed the valid portion had it been known that the invalid portion must fail, effect will be given to so much as is good." 1 Lewis' Sutherland, Statutory Construction (2d ed.), p. 580.

"There is a difference between an exception and a limitation.   When a statute upon a subject of a general nature is made to extend to the whole state in one part thereof, and then in another part an attempt is made to limit its operation to territory less than the state, the limitation may be disregarded; because to give it effect would render the whole

statute unconstitutional; and such construction should be given, when reasonable, as will uphold the statute rather than one which would defeat it." 1 Lewis' Sutherland, Statutory Construction (2d ed.), p. 598.

See, also, *State ex rel. Wilmot v. Buckley*, 60 Ohio St. 273, 54 N. E. 272.

This court has upheld the view here expressed, even in a case where the separable unconstitutional provision was contained in the act as a proviso to the only section involved. It was not necessary to sustain that section to save the act as a whole. In *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 621, 102 Am. St. 885, 65 L. R. A. 336, the section of the revenue law relating to taxation of transitory stocks of merchandise, Laws of 1899, p. 295, was held valid, though the proviso giving a rebate to the owner of the goods of a part of the tax proportional to the part of the assessment year he was not in the county, was rejected as invalid. Clearly, there can be no stronger presumption that the legislature would have passed that section without the proviso than that it would have passed the act here under consideration without the limitation. In the *Nathan* case, this court quotes the following language from 1 Kent's Commentaries, p. 463, as quoted in Black on Interpretation of Laws, p. 278:

"There is a distinction in some of the books between a saving clause and a proviso in the statute; though the reason of the distinction is not very apparent   .   .   .   It may be remarked, that a proviso repugnant to the purview of the statute renders it equally nugatory and void as a repugnant saving clause, and it is difficult to see why the act should be destroyed by the one and not by the other, or why the proviso and the saving clause, when inconsistent with the body of the act, should not both of them be equally rejected."

The court continues:

"Be this rule of construction as it may, the foregoing distinction is without significance, as applied to the facts in the action at bar, since we have reached the conclusion that the proviso of the above statute is void on constitutional grounds,

and must therefore be rejected. Eliminating the proviso from the above section 12 of the act of 1895, such enactment seems to be complete in itself, fully authorizing the assessment, levy, and collection of the tax in question."

The rule in the *Nathan* case is followed with unreserved approval in *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207; and *Shook v. Sexton*, 37 Wash. 509, 79 Pac. 1093. When we consider that, if the limitation contained in the last section of the act here in question be held inseparable, if unconstitutional, it would annul, not alone one provision of the act, but the whole act, and wholly defeat the dominant purpose of the legislature as clearly declared in the first section and carefully worked out in the other eleven sections, this case presents much stronger ground for holding the limitation separable and not controlling, than is found for so holding the proviso in the *Nathan* case.

Concluding, as we do, that, even if the last section of the statute in question be held unconstitutional, it alone should be rejected, and should not be permitted to defeat the dominant motive of the legislature in passing the act, it is manifest that whether or not this last section be held unconstitutional is immaterial in this case. Being immaterial, we defer a determination of its constitutionality until it shall be raised in a case to which its decision is essential. We hold that, in any event, the remainder of the act is constitutional and valid.

The judgment of the trial court is affirmed.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.