[No. 14772.    Department Two.    July 30, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Thomas A. E. Lally et al., Appellants,* v. JOHN J. CADIGAN *et al., Respondents.*[1]

INSURANCE—COMPANIES—STOCKHOLDER'S MEETINGS—PROXY VOTING —LIMITATIONS—AUTHORITY OF TRUSTEES—STATUTES. Under Rem. Code, § 6059-63, providing that the trustees of an insurance company may vote to permit an officer of the corporation to vote proxies at the annual stockholders' meeting, a resolution of the trustees permitting such voting, but limiting the authority to special matters and attempting to designate the persons to be voted for as trustees, is a valid authority for proxy voting by an officer, but the attempted restrictions thereon are void as beyond the authority of the trustees, and contrary to public policy and the intent of the legislature.

Appeal from a judgment of the superior court for Spokane county, W. W. Zent, Judge *pro tempore,* entered March 4, 1918, upon findings in favor of the defendants, in *quo warranto* to try title to offices of a corporation, after a trial to the court.    Affirmed.

*G. M. Ferris* and *Thomas A. E. Lally,* for appellants.

*Graves, Kizer & Graves,* for respondents.

MACKINTOSH, J.—The annual meeting of the stockholders of the New World Life Insurance Company was to be held on February 12, 1918, and the defendant Cadigan, who was president of the company and one of its trustees, held proxies for 88,698 of the 113,000 shares of the company's capital stock. At a meeting of the board of trustees, held before the stockholders' meeting, the question of allowing the voting of proxies by an officer of the company was discussed and acted upon. This was in pursuance of a requirement of the insurance code, which provides:

"Every domestic company shall hold an annual meeting in the month of January or February, of its

[1]Reported in 174 Pac. 965.

stockholders, if a stock company, or members, if a mutual company, for the purpose of receiving the report of its officers and trustees, and to elect trustees. Each share of stock in a stock company, and each policy-holder in a mutual company, shall be entitled to one vote in the election of trustees, and if unable to attend in person, may appoint any stockholder or member his proxy to vote his stock or policy, but no officer of said company shall be allowed to vote the proxy of any stockholder or member thereof; Provided, however, officers of stock companies may do so when the majority of the trustees vote to permit such action." Laws 1911, ch. 49, p. 208, § 63 (Rem. Code, § 6059-63).

The action of the board of trustees took the form of a resolution that the officers of the company be authorized to vote proxies held by them at the annual meeting of the stockholders, but limited that authority to thirteen special matters and attempted to designate the persons to be voted for as trustees, and to prevent the voting for the removal of any of the then trustees, and limited the right of the proxy holder to vote other than as directed in the resolution, upon the question of amending the by-laws of the company. At the meeting of the stockholders, the defendant Cadigan voted the proxies held by him generally and not in accordance with the resolution, and as a result of this voting, trustees other than those named in the resolution were elected, which gave rise to this action, this being a proceeding in *quo warranto* to try title to certain offices of the company, the relators claiming to have been duly and legally elected by the old board of trustees, and the defendants being the officers selected by the board elected at the stockholders' meeting in the manner referred to. The sole question presented is whether or not the defendant Cadigan legally voted the proxies held by him at the stockholders' meeting; the relators'

position being that the board of trustees had the right to limit the use of the proxies when it authorized the voting of proxies at the stockholders' meeting, and the defendants claiming that the only authority held by the board of trustees was to either grant or withhold permission for the officers of the company to vote proxies held by them.

Upon this question, there has been no adjudication so far as the diligence of counsel and this court can determine. The relators claim that the situation is analogous to that presented where a city, in passing a franchise ordinance, inserts restrictions which it had no right to impose, and cite decisions holding that the public service corporation seeking the benefit of the franchise ordinance is nevertheless bound by such restrictions. *Southern Bell Tel. & Tel. Co. v. Richmond,* 103 Fed. 31. Also, by analogy, it is asserted, that the rule applying in the construction of statutes should be applied to the question at bar. *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540. That the resolution must be considered as a whole, and that if the trustees did not have the power to limit the manner of using the proxies, then the entire resolution must be held to be of no avail; because, without the limitations contained in the resolution, the board of trustees would not have passed it.

We have held in *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 140 Pac. 540, that, where the body of an act and the limiting clause are inseparably connected in purpose and substance, they cannot stand one without the other. It is apparent that the intention of the board was to dictate the manner of the use of the proxies.

On behalf of the defendants, it is claimed that the resolution should be interpreted under the maxim *omne majus continet in se minimis;* and that, where

more is done than ought to have been done, that portion for which there was authority is valid, and the resolution should be held to be void only as to that part passed in excess of authority; this rule being applied in cases where the legislative body has attempted to exceed the powers conferred upon it, and that, in cases where a city council was authorized to incur indebtedness to a certain amount, an attempt to create a greater indebtedness fails only so far as it exceeds the constitutional limitation. *Dunn v. Great Falls,* 13 Mont. 58, 31 Pac. 1017; *Germania Sav. Bank v. Darlington,* 50 S. C. 337, 27 S. E. 846.

In the case of *Scott v. Flowers,* 61 Neb. 620, 85 N. W. 857, the state constitution allowed the commitment to the reform school of children under sixteen, but the legislature of Nebraska provided for the commitment of children under eighteen—the court held that, under the statute, commitment of those under sixteen was legal. In trade agreements, the courts have held valid so much of the agreements as the parties might lawfully make, and have disregarded those portions to which they could not lawfully agree; the agreements, being held to be divisible, were enforcible so far as valid. *Lange v. Werk,* 2 Ohio St. 519; *Peltz v. Eichele,* 62 Mo. 171; *Thomas v. Miles,* 3 Ohio St. 274; *Smith's Appeal,* 113 Pa. St. 579, 6 Atl. 251; *Mallan v. May,* 11 M. & W. (Eng.) 653.

Analogy is also claimed between the situation here and that presented in cases involving the law relating to conditions, it being argued that that portion of the resolution which authorizes the voting of the proxies was in the nature of a grant, and that part which directed how the proxies should be voted was in the nature of a condition annexed to the grant, and the grant being valid but the condition invalid, the grant

will be sustained and the condition defeated. 4 Kent, Commentaries (13th ed.), 131; 13 Cyc. 687; *St. Louis J. & C. R. Co. v. Mathers,* 71 Ill. 592, 22 Am. Rep. 122; *Barksdale v. Elam,* 30 Miss. 694; *Bradley v. Spokane & Inland Empire R. Co.,* 79 Wash. 455, 140 Pac. 688, L. R. A. 1917C 225.

Another analogy is claimed by the defendant to exist in the law of contracts, in reference to the enforcement of a contract legal in part and in part illegal.

A treatise might be written in an attempt to explain and differentiate these claimed analogous situations, but no purpose would be served thereby except to further burden the library space of the members of the bar here and yet to come. We are content to hold that the presumptions which are applicable where legislative acts are under consideration are not necessarily determinative of private rights between private individuals.

It was not the intention of the legislature, in passing the section that we have under scrutiny, that thereby it should place in the hands of the board of trustees of an insurance company the power to perpetuate itself by means of restricting the voting of proxies, or by that means to eliminate from the stockholders the ability to control the destinies of their company. The stockholder himself in giving his proxy might couple with it such directions to his representative as he might see fit and those restrictions the board of trustees could nullify, if the construction of the resolution contended for by the relators is correct, by coupling with the authority to vote the proxy the imposition of explicit directions as to the manner of so voting. It is possible that owners of stock might desire, as they have a right, to accompany their proxy with secret instructions to their representative as to his manner of voting their stock upon certain questions, and it could not be

seriously claimed, we take it, that the board of trustees could deprive the stockholder of his right to impose such restrictions by attempting to compel the representative to vote contrary thereto. Dozens of instances of this nature might be suggested which could easily arise in the operation of the modern complicated business conducted by a large insurance company. We take it that it cannot be successfully argued that the attempted restrictions contained in the resolution were not without the power of the board of trustees to enforce. We have, then, the bald question of whether, having given the power to vote the proxies, the attachment to that power of void conditions destroys the power itself. We take it that under the statute the board of trustees was to determine whether at the ensuing meeting of the stockholders the policy of allowing proxies to be voted by officers of the company should or should not prevail, and this policy was not to be determined with reference as to how the officer holding the proxy might have been instructed by his principal to vote the stock or how his judgment, in the absence of instructions from his principal, might prompt him to vote it. Having determined upon the policy, the board of trustees exercised all the rights which it possessed, and it was powerless to prevent the agency created by the giving of the proxies from being executed according to the will of the stockholder, otherwise the board would have a power greater than that of merely granting or refusing the right for these proxies to be voted; for it could assume, as it attempted to do here, authority over the proxy, making the holder thereof their agent rather than the agent of the stockholder, by directing how the stock should be voted, substituting its judgment for that of both the stockholder and his agent. Not only was this, as we have said, a power not given by

the statute, but was the attempt to exercise a power which is contrary to sound public policy. The board of trustees, in this case, by its resolution, sanctioned the voting of proxies. Having done that, its authority ceased and the officer was at liberty to proceed to vote the stock which he represented according to the directions of the stockholder, or if no directions were given, according to his own judgment. Whether this is or is not analogous to rules adopted in different decisions involving other relations and conditions, is a matter of very little materiality—we are satisfied that it is good every-day common sense, and is the rule here announced for the construction of this statute.

The judgment will be affirmed.

MAIN, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.