THE CAPITAL BANK OF ST. PAUL, Respondent, *v.* SCHOOL DISTRICT 85 OF CASS AND BARNES COUNTIES, Appellant.

**1. Municipal Corporations — School Districts — Implied Powers.**

Though there may be no express power given to the district to provide furniture for the school-houses, under the act to establish public schools (chap. 14, Laws 1879), still, the general purposes of the act would necessarily imply this power, and authorize incurring obligations to that end.

**2. Same — Warrants in Excess of Revenue — Validity — Ratification.**

Where, by § 29, subds. 5, 8, chap. 14, L. 1879, the revenue a school district can raise in any one year is limited, and this limit had been exceeded by warrants of one issue for necessary improvements being made, but before the completion of the improvements two years had elapsed, and the amount of the warrants did not exceed the revenue that could have been collected for that period, *held*, the warrants were valid where the action of the school board in the premises had been approved by the district, and it had accepted and used the improvements. *Held, also,* that the inhabitants of the district had the power to ratify the action of the board.

(Argued May 12, 1887 ; affirmed May 25, 1888 ; opinion filed June 3, 1889.)

APPEAL from the district court, Cass county; Hon. W. B. McConnell, Judge.

Action to enforce payment of school orders. Defense, that such orders were issued by the school board without authority. Plaintiff had judgment on trial by the court without a jury, and the defendant appealed.

*C. E. Joslin* (*M. W. Greene* of counsel), for appellant.

A municipal corporation can exercise the following powers only: (1) Those granted in express words; (2) those necessarily implied in or incident to powers expressly granted; and, (3) those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable. 1 Dill. Mun. Corp., § 89.

There was no authority to issue these orders, and persons purchasing them are held to notice of that fact. School District v.

School District (Neb.), 11 N. W. Rep. 311; Hopper v. Town of Covington, 8 Fed. Rep. 777; School District v. Thompson, 5 Minn. (Gil.) 221; Union School District v. First Nat. Bank, 2 N. E. Rep. 194. The only way for the district to have made the improvements was by taxation. 1 Dill. Mun. Corp., §§ 117, 120, 125, 136; Williamsport v. Commonwealth, 84 Pa. St. 487; Ganse v. City of Clarksville, 5 Dill. 165; Fuller v. Chicago, 89 Ill. 282; Springfield v. Edwards, 84 id. 626; Low v. People, 87 id. 385.

There is nothing in the nature of municipal corporations which favors implied power to borrow money, and issue commercial paper therefor. Burroughs, Pub. Sec. 172, 173, 176, 177; Ketchum v. City of Buffalo, 14 N. Y. 356; Town v. Swackhamer, 37 N. J. L. 191; Dent v. Cook, 45 Ga. 323.

The sale of such securities is regarded as a borrowing. Burroughs, Pub. Sec. 185, 191, 192; Dillon, Mun. Bonds, § 6; Jones, R. R. Sec., § 283; Clemens, Corp. Sec. 26, 28; Nashville v. Ray, 19 Wall. 468.

There could be no ratification as there was no power to issue the orders. § 1351, C. C. See also Green's Brice's *Ultra Vires*, 546, n. *a*, 549, 550; Taymouth v. Koehler, 35 Mich. 22; Tracy v. Guthrie, 47 Ia. 27; Cook v. Tullis, 18 Wall. 332; Wood v. McCain, 7 Ala. 706; Taylor v. Robinson, 14 Cal. 396; McCracken v. San Francisco, 16 id. 591; Tailor v. District, 25 Ia. 450–451; Hopple v. Brown Township, 13 Ohio St. 328; Treadwell v. Commissioners, 11 id. 190.

Though appellant admitted the orders were not strictly *ultra vires*, still the facts disclosed would not warrant a finding of ratification.

*White & Hewit* (*C. K. Davis* and *A. D. Thomas* of counsel), for respondent.

There is a broad difference between the cases cited by counsel and the one at bar. Here the orders are issued under a general law giving the district the power to do so. The law of 1879 was in force and neither repealed nor modified by the bonding act of 1881, but additional power was given. See Laws 1879, chap. 14, §§ 21, 39, 44, 52. Having the power then, they are presumed to have been issued upon a consideration, and any defense must be

pleaded and proved. Dan'l, Neg. Inst., § 31; Commissioners v. Day, 19 Ind. 451; Clark v. City of Des Moines, 19 Ia. 199; 1 Dill. Mun. Corp., §§ 501–2; Burroughs, Pub. Sec. 638.

Here the only limitation of the statute was on the amount of taxes that could be collected for any one year, not the amount that could be expended. This will be found to distinguish many of appellant's cases and not affect the order in suit. Robbins v. School District, 10 Gil. (10 Minn.) 268; Regents v. Hunt, 7 Gil. 45, 48, 49; Dillon, Mun. Corp., § 485; Mullarky v. Town, 19 Ia. 21; Sturtevant v. City, 3 McLean, 393; Galena v. Corwith, 48 Ill. 423; Commonwealth v. Councils, 41 Pa. St. 278; Bank v. Town, 7 Ohio, 354; Clark v. School District, 3 R. I. 199.

The facts disclose a ratification by the district. Bicknell v. Widner, 73 Ind. 501–5; Wallis v. Johnson, 75 Ind. 368; Norton v. Shelby County, 6 Sup. Ct. Rep. 1132; Greene's Brice's *Ultra Vires*, 724; Herman, Estop. 1218, 1310, 1313, 1367; 2 Smith, L. C. 459; Story, Ag., §§ 255, 256; Wheeler v. Hall, 41 Wis. 447, 451.

If the district had the power to erect the building, it had the power to ratify the act. Norton v. Shelby County, 6 Sup. Ct. Rep. 1121, 1129–30; Herman, Estop. 1218, 1367.

SPENCER, J. (*After stating the above facts.*) From the evidence in this case and the findings of the trial court it appears that the defendant in this action is, and since May, 1882, has been, a school corporation, organized regularly under and in accordance with the laws of this territory; that on May 26, 1882, the inhabitants of said district lawfully assembled, elected the proper and necessary officers of such school district as provided by law, selected a site for a district school-house, voted a tax of 1% on the taxable property of such district to pay for such site, and build a school-house, and subsequently, to-wit: August 12, 1882, at a meeting of such inhabitants, they voted to issue bonds in the sum of $1,500, and directed the proceeds thereof to be applied on the debt incurred for such site, school-house, and furniture for the same; that such bonds were duly issued and negotiated by the school board, and the proceeds received by them; that the defendant obtained title to such school-house site June 8, 1882, and that on that day, and for the purpose of paying for such site, and to obtain funds with which to pay for such school-house and

furniture for the same, the officers of such school board — the director and clerk — issued and delivered to one E. C. Northup the five orders in suit, each for $500; that said orders were duly presented to the treasurer of said school district for payment, which was refused for want of funds, and so indorsed by said treasurer, and who also indorsed upon each of said orders the following: "This order draws 10% interest from this date, June 8, 1882." On the same day these orders were negotiated, and sold to the plaintiff in this action by one of the directors of defendant, for $2,300. The proceeds of these orders, concededly, were used by the school board in payment for the site, school building, and furniture. The proceeds of the bonds were not used for such purpose, nor were they used in the payment of said orders, nor does the record disclose any purpose for which these bonds or the proceeds thereof were used, or whether used at all. It does, however, appear affirmatively that they were not used in purchasing the site for the school-house, or erecting the building, or furnishing it, or in payment of any of the orders in suit. The title to the site selected by the inhabitants of the district was duly obtained in the name of the district, the school-house erected, completed, and furnished early in 1883, and immediately thereafter taken possession of by defendant, and has at all times since been used by it for school purposes, school meetings, and kindred objects. That on June 30, 1884, at the annual meeting of said district, the treasurer submitted his report of the proceedings of said school board, by which it appeared that orders for $2,800 had been issued and sold, including the orders in suit or the proceeds thereof, and that the whole of such sum had been expended for a site, school building, and the furniture thereof, and which report was accompanied by the vouchers for such expenditures. At such meeting such report was, with full knowledge of all that had been done and all expenditures made, accepted, audited, and allowed.

On the trial of the action the plaintiff had judgment for the full amount of said orders, including the interest thereon, and the defendant appealed to this court.

The principal grounds of error relied upon by the defendant for a reversal of this judgment are two, viz.: *First*, that the school board exceeded its authority in issuing orders for a greater

amount than 1% on the taxable property of the district for the purpose of purchasing a site and building a school-house; *second*, that the defendant had no authority or power to ratify the action of its school board in issuing such orders, so as to make them chargeable against the school district.

Upon the former of these propositions the true rule doubtless is that corporations of the character of the defendant have only such powers as are expressly granted by the law providing for their creation, and such others as must necessarily be implied to have been given them in order to carry the purposes of their organization into effect,— such as are incidental to the exercise of the powers expressly granted or necessarily implied to effect the purpose and object for which the corporation is created.

Did the defendant exceed its authority by voting the orders in question or ratifying the act of its school board in doing so? By subdivision 5, section 29, chapter 14, Laws 1879, it is provided that the inhabitants of school districts may vote annually a tax of 1% on the taxable property of the district to purchase or lease a site for a school-house, etc.; and by subdivision 8 of said section it is provided that school districts may vote a tax as may be necessary to furnish the school with black-boards, stoves, maps, furniture, and apparatus necessary for illustrating the principles of science, and to discharge any debts or liabilities of the district lawfully incurred, such tax, however, not to exceed ½% in any one year on the taxable property of the district. There is not otherwise than in this subdivision any positive authority conferred upon school districts under this law to provide the school-houses, which may be or have been erected, with furniture at all; and yet it cannot be doubted that though nothing whatever had been said upon the subject of furniture for these school-houses in the law itself, that, under the general powers conferred, the school district or its proper officers would have the authority and right to furnish such school-house properly, and make the property of the district chargeable with the necessary expense of doing so. This would indisputably have been the proper exercise of an incidental power granted, for there is perhaps no positive grant of such power, but its exercise is necessary, to the end that the object of the law may be fulfilled.

It appears from the record that the proceeds of the orders were in fact all used to purchase and pay for the school-house site selected, to erect the school building, and purchase the necessary furniture for it. What proportion of the fund was used for each is not disclosed, and thus we are unable to determine whether more than 1% on the taxable property of the district was used in purchasing the site and building the school-house or not, or what part was used in purchasing furniture, apparatus, or appendages; nor can we presume that the sum actually expended was not, in fact, necessary for the several purposes stated, and used in pursuance of the several powers granted, and those necessarily implied for the effective operation of the powers granted intended to provide means for the education of the young. It will be observed and borne in mind that the defendant obtained title to the land comprising the site on which the school-house was built on June 8, 1882, and that the erection of the school-house began on the 13th of the same month, but that it was not completed and furnished until 1883, and the vote of the inhabitants of the district, accepting and adopting the report of the expenditures of the proceeds of these orders, was not taken until June 30, 1884, more than two years after the orders in controversy were issued. For these two years the district had the power under the statute to expend in the aggregate, for a site, school-house, and furniture, a sum greater than the whole amount of orders drawn, viz., 1% on the taxable property of said district for a site and school-house in 1882, and a like amount for such purpose in 1883, and ½% on such property for furniture during each of said years. See subs. 5, 8, § 29, chap. 14, Laws 1879. Doubtless, under these provisions of the statute, the district had the power, and in each of the years 1882 and 1883 might have voted in the aggregate 1½% on the taxable property of the district for a site, school-house, and furniture, which would have amounted to considerably more than the face value of the orders issued. The district did not do this, but it did select a site, and direct the construction of a school-house thereon. The site was purchased, and the school-house constructed and furnished, by the school board. In doing this they expended more money than could legally have been collected by tax on the

property of the district for one year, but not so much as might have been made chargeable and collected in the aggregate during the two years intervening from the time its construction began until it was finally completed, and when it was completed, and a report of the orders issued, and all the expenditures made were reported; the same being less than the amount which they might have expended for the two years during which the school-house was being constructed. Did not the district have the power to ratify the acts of its board, and did it not do so by accepting and adopting the report made, and using and occupying the school building? Suppose the district had authorized the issue of one-half of these orders in 1882, and the residue in 1883, for the purposes for which they were used. Doubtless they would have been valid. And so they might have raised by tax in 1882, for the purposes of purchasing a site and building a school-house, such sum as the law permitted on the taxable property of the district, and they could have repeated the process the next year, had they so desired, and so continued until they had obtained such a school-house as satisfied the necessities of the district. And so had the district voted and collected the amount it could have done according to this law, in each of the years 1882 and 1883, and had the same in its treasury, doubtless it might legally have appropriated such portion of it as might have been necessary to pay for the site, school building, and its proper furniture, or to have paid the orders in suit, so long as it did not exceed the aggregate amount which had been collected under the law. This is, we think, substantially what the district did by its vote, accepting and adopting the acts of its officers, June 30, 1884.

These officers, during the years 1882 and 1883, had constructed and furnished a school-house upon a site selected by the inhabitants of this school district. In doing this they used, without authority, perhaps, of the district, school orders purporting to represent the credit of the district, though not to any extent greater than the district itself might have used them in the aggregate during the time of the construction of the school-house.

Upon the completion of the school-house the school board reported the number of orders issued, and the amount of each, the amount of proceeds received from them, and the uses to which

such proceeds had been put (showing that they amounted in gross to a less sum than the district might have issued themselves during the time the school-house was in process of construction); that the proceeds were all used, in fact, in purchasing the site selected by the district, and building and furnishing a school-house. Under these circumstances, and with knowledge of these facts, the district accepted and occupied the school-house, and adopted and approved the report. This, we think, was a sufficient ratification of the act of the school board by the district; and under the facts of this case, as disclosed by the evidence and found by the trial court, the inhabitants of the district, at their school meeting of June 30, 1884, had the power to ratify the acts of these officers in issuing the orders in question, and expending the proceeds for the construction and furnishing of the school-house on the site selected by the district.

The following cases are important, as bearing upon the question involved in this appeal: Robbins v. School Dist., 10 Minn. 340 (Gil. 268); Norton v. County of Shelby, 6 Sup. Ct. Rep. 1132; Holmes v. City of Shreveport, 31 Fed. Rep. 113.

We find no error in the record, and the judgment appealed from must, therefore, be affirmed. All of the justices concurring. Judgment affirmed, with costs.

### 1. Municipal Corporations — School Districts — Powers.