<hr/>

[No. 10202. Department One. July 18, 1912.]

A. Hambach, *Respondent*, v. H. B. Ward *et al.*, *Appellants.*[1]

Statutes—Title and Subject. The object of an act rendering municipal corporations liable to laborers and materialmen if the city fail to take a bond from contractors on public work, is sufficiently disclosed by the title, an act requiring bonds from contractors on public work, conditioned to pay laborers and materialmen.

Municipal Corporations—Contracts—Public Work—Bonds— Liability for Labor and Material. The fact that city officers did not have authority to make a contract for a public work, will not avoid the liability of the city to laborers and materialmen for the failure of the city to take a bond from the contractors, as provided by Rem. & Bal. Code, § 1159, where the contractor was engaged in a public work such as the officers had authority to carry on, with their knowledge and consent, and the city had received the benefit of the work.

Same—Amount of Liability—Quantum Meruit. Rem. & Bal. Code, § 1159, rendering a city liable to laborers and materialmen on public work, if it fails to take a bond from the contractor, creates a liability only upon a *quantum meruit* and not for the "agreed" price of the labor or material.

Same—Nature of Liability—Penal or Remedial. Rem. & Bal. Code, § 1159, rendering a city liable for labor and materials on pub-

[1]Reported in 125 Pac. 140.

lic work, if it fails to take a bond from the contractor, is remedial and not penal in its nature, not differing from statutes for mechanics' liens.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered October 21, 1911, upon findings in favor of the plaintiff, in an action for materials furnished a contractor on public work. Affirmed.

*S. J. White*, for appellants.

*Peterson & Macbride*, for respondent.

Gose, J.—This action was brought under the provisions of the statute, Laws 1909, p. 716, § 1 (Rem. & Bal. Code, § 1159). It is alleged in the complaint that the plaintiff and his assignors furnished material for and performed labor upon the city hall and library building in the city of Edmonds, a city of the third class, at the instance of the defendant Ward; that Ward erected the building under a contract with the city, and that the city failed to take a bond as required by the statute. The answer admits that Ward erected the building, and that the building is the property of the city; but denies that the city entered into a contract with him for its construction. There was a judgment for the plaintiff against the city, and it has appealed.

The appellants' first contention is that the title of the act is not sufficiently broad to embrace the obligation which section 2 puts upon municipalities failing to take a bond. The title of the act is as follows:

"An act requiring bonds from contractors contracting to do public work, conditioned to pay laborers, mechanics, materialmen and others."

While the title might well have been more specific, we think it is sufficiently comprehensive to disclose the object of the act, within the meaning of the constitution. The purpose of the constitutional provision is to require the title of an act to call attention to the subject-matter of the legislation, so that one reading it may know what matter is being legislated

upon, "and it is sufficient when it is broad enough to accomplish that purpose." *State ex rel. Zent v. Nichols*, 50 Wash. 508, 97 Pac. 728. See, also, *State v. Montgomery*, 57 Wash. 192, 106 Pac. 771; *State v. Ames*, 47 Wash. 328, 92 Pac. 137; *State v. Merchant*, 48 Wash. 69, 92 Pac. 890; *State ex rel. McFadden v. Shorrock*, 55 Wash. 208, 104 Pac. 214; *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *State ex rel. School District No. 56 v. Superior Court, ante* p. 189, 124 Pac. 484.

This title was considered in the *Bratnober* case, at page 614, where we said:

"The act here involved, both in its title and body, relates only to securing claims by *contractor's bonds*, and has no reference whatever to liens. Its title we think fairly suggests all that is necessary, as to who are to be secured by such bonds in the body of the act."

A reading of these cases will disclose that this court has adopted a rule of liberal interpretation, and has declined to reject any part of an act where the title discloses its general object and is not misleading.

The contract recites that it is entered into by Ward, as the party of the first part, and the city of Edmonds, as the party of the second part, and is signed "William Keeler, Mayor, H. V. Allen, Thomas Hall, Committee." It is contended that the contract was not legally executed, and that the city did not confer upon the committee the power to enter into the contract. These questions we need not consider. The evidence shows, that the goods were furnished at their reasonable value; that they were actually used in the construction of the building; that they have not been paid for; and that the city has accepted the building and is using one floor as a city library and the other as a city hall. In the beginning, the city had an offer of a gift of $5,000 from Mr. Carnegie, to be used in the construction of a free public library building. The offer was accepted, and the money was received

and used in the construction of the building. The building was made large enough to serve the two-fold purpose of a library and a city hall, and the $5,000 was found to be inadequate for the double purpose. We think the words contained in the act, "shall contract with any person or corporation to do any work for the state, county or municipality," etc., have reference to the actual relation created, rather than to the strict legal relation. The city had actual knowledge, while the building was in course of construction, that Ward, whether empowered to do so or not, was assuming to represent it; and after the building was completed, it accepted it and has since occupied it. It is not contended that the city did not have the power to enter into the contract, but, the contention is that the contract was irregularly executed. The obligations flowing from a power irregularly exercised by a municipality or a municipal officer are very different from those which follow an attempt to exercise a power that does not exist in such municipality or officer. In the case at bar, the city actually constructed the building through Ward, whom it recognized as a contractor. We are unwilling to announce a rule of construction which would require every person furnishing a few dollars worth of material for a public work, or performing a few dollars worth of labor thereon, to ascertain at this peril whether the governing authorities had observed all the formalities of the law prior to entering into the contract. Such a construction would defeat the purpose of the law. As was said in *Bell v. Kirkland*, 102 Minn. 213, 113 N. W. 271, 120 Am. St. 621:

"By what authority or reasoning is one selling material to a municipal contractor made the curator of public interests, and required to do independently the work of the counsel for the city as to correctness of titles, or of the engineer as to the feasibility of the construction of a sewer or its utility when constructed? What considerations remove him from the protection of the presumption of performance of official duty by which persons dealing on the faith of instruments ordinarily have the right to rely?"

The better view is that, where one, assuming to be a con-
tractor, is engaged in the prosecution of a public work such
as the authorities are authorized to carry on, and with their
knowledge and consent, those who furnish labor and material
for the work may rely upon the presumption that the public
authorities have done their duty, and assume without inves-
tigation that he is a contractor.   This principle is supported
by the following authorities:   *Green v. Okanogan County*, 60
Wash. 308, 111 Pac. 226; *Fransioli v. Thompson*, 55 Wash.
259, 104 Pac. 278; *Kansas City Hydraulic Press Brick Co. v.
National Surety Co.*, 167 Fed. 496; *Bell v. Kirkland, supra;
Aspinwall-Delafield Co. v. Borough of Aspinwall*, 229 Pa.
1, 77 Atl. 1098; *People ex rel. Griffiths v. Board of Sup'rs
of Oneida County*, 128 N. Y. Supp. 638.

In the *Green* case, a taxpayer sought to enjoin the execu-
tion of a contract let by the county for the construction of a
bridge.   Pending the action the bridge was completed and
payment made.   We held that the contract had not been
legally entered into, but that the county was liable to the
builder for the reasonable value of the bridge.   While that
case does not rest upon the statute under consideration in
the case at bar, it discloses the equitable view adopted by this
court where a municipality receives the benefit of a needed
improvement which it had the power to make and seeks to
retain the improvement and at the same time avoid liability
for its creation.   In the *Kansas City* case, a contractor's
bond was given under a statute similar to our statute.   The
work was completed by the contractor under the supervision
of the city, and then accepted and approved.   The contractor
failed to pay the plaintiff for material furnished for the work,
and he brought suit upon the bond.   The contract was held
to be illegal, but a recovery upon the bond was permitted.   It
was there contended that the illegality of the contract ex-
tended to and vitiated the bond.   In meeting this argument
the court said:

"The plaintiff could have established its case without any aid from the illegal contracts. It is true that it pleaded those contracts in its complaint, and introduced them as part of its case upon the trial. This, however, was not necessary. The proof of the bonds, and the nonpayment of the purchase price of the brick used in constructing the improvements referred to in the bonds, would have made out a complete case in plaintiff's favor."

The manifest purpose of the statute is to give laborers and materialmen the same protection, in the absence of a bond, that they would have with the bond; in short, to substitute the credit of the municipality for the bond.

Authorities are cited, to the effect that one cannot sue upon a contract and recover upon a *quantum meruit*. It is true the complaint alleges the "agreed" price of the labor and material, but the evidence admitted without objection is that the goods were delivered to the contractor at their reasonable value. Without regard to the contract price, the respondent can recover only the reasonable value of the labor and goods. *Crowe & Co. v. Adkinson Const. Co.*, 67 Wash. 420, 121 Pac. 841.

It is argued that the statute, in so far as it gives a right of action against the municipality, is penal in its nature, and must be strictly construed, and that the word "contract" must be held to mean a contract executed in conformity with all the formalities of law. The statute is not penal but remedial in its nature. It does not differ in this respect from the statutes giving a lien upon the property of a private owner for goods furnished the contractor. In the one case, the property itself is holden as security for the debt; and in the other, in the absence of a bond, the state imposes a liability upon itself and its members for the reasonable value of labor and property for which it receives a benefit. The statute is simply a recognition of an equitable obligation.

The judgment is affirmed.

CHADWICK, PARKER, and CROW, JJ., concur.