JOHN KRETCHMER, William Flora, Mose Wharton, and Carl Newman, on Their Own Behalf and Acting for all Others Like Interested, v. THE SCHOOL BOARD OF DISTRICT NO. 12, BARNES COUNTY, NORTH DAKOTA, situated in Noltimier and Weimer Townships of said County, and F. C. Schroeder, C. A. Fisher, and John Salzman, School Directors of said District, and Members of said Board, and Henry Deitmier, Clerk of said Board, and George Raveling, Treasurer of said Board, and Each and All of Them.

(158 N. W. 993.)

**School district — taxpayers of — plaintiffs — officers of district — injunction — high school — maintaining — defendants — denials of — issues — trial de novo — supreme court.**

Plaintiffs, as taxpayers of school district No. 12, Barnes county, seek to enjoin the defendants as officers of such school district from establishing and maintaining a district high school therein without first submitting the question to a

vote of the electors. Defendants answered, denying that they have established or are attempting to maintain such high school. The issues were resolved by the trial court in defendants' favor, and the injunction prayed for was denied. Upon a trial *de novo* in the supreme court the judgment is, for reasons stated, reversed, and the relief prayed for in the complaint is granted. Christianson and Bruce, JJ., dissenting.

Opinion filed April 27, 1916. Rehearing denied July 12, 1916.

Appeal from the District Court of Barnes County, *Coffey,* J.
From a judgment in defendants' favor, plaintiffs appeal.
Reversed.

*Lee Combs* and *L. S. B. Ritchie,* for appellants.

School districts can only have and exercise such powers as are expressly granted by the law providing for their creation. They are created for special purposes, and have only such powers as are granted by legislative enactment. Capital Bank v. School Dist. 6 Dak. 248, 42 N. W. 774; Farmers' & M. Nat. Bank v. School Dist. 6 Dak. 255, 42 N. W. 767; 35 Cyc. 849, 925.

"Where the question of the creation of a district high school is by the statute to be submitted to the voters in the territory which is to be affected, such statute is mandatory, and must be followed to effect a legal establishment of a district high school." Ping v. Keith, 150 Ky. 452, 150 S. W. 523; 35 Cyc. 849, 1050.

*M. J. Englert,* for respondents.

The real point in controversy here is whether or not the board had authority under our statute to hire a teacher to teach the eighth grade -work and additional subjects prescribed by the board with the approval of the county superintendent. Comp. Laws 1913, §§ 1173, 1178.

The legislature has delegated this power to school boards, and such boards have power also to make all necessary repairs to school buildings, to provide fuel and supplies, and janitor service. Sinnott v. Colombet, 107 Cal. 187, 28 L.R.A. 594, 40 Pac. 329; Comp. Laws 1913, § 1175.

The fact that the school is conducted in a separate building, does not violate the statute. Powell v. Board of Education, 97 Ill. 375, 37 Am. Rep. 123; Board of Education v. Welch, 51 Kan. 792, 33 Pac. 658; W. P. Myers Pub. Co. v. School Twp. 28 Ind. App. 91, 62 N. E. 67; Sinnott v. Colombet, 107 Cal. 187, 28 L.R.A. 594, 40 Pac. 329.

Fisk, Ch. J. This is an appeal from a judgment of the district court of Barnes county, and comes here for trial *de novo.* The facts are substantially as follows: Plaintiffs, as citizens, residents, and taxpayers of school district No. 12, which includes the township of Noltimier and Weimer in Barnes county, seek to enjoin the defendants, who are members of the school board, and also the clerk and treasurer of such school district, from maintaining an alleged high school therein without first submitting the question of such additional school to the voters of the district. At and prior to the time this litigation arose there were but three schoolhouses in the district, and but three schools had been conducted therein. During the years preceding the commencement of this action about nineteen pupils attended school No. 1, ten attended school No. 2, and about twenty-two attended school No. 3. In all there were about seventy-seven children of school age in the district. The three school buildings were conveniently located, and no question had ever been raised as to the sufficiency of accommodations afforded by these three buildings and the schools maintained therein. In so far as schools were concerned no friction arose until about September 15, 1914, when a committee consisting of four women of the district appeared before the school board at a special meeting thereof and asked that a high school be established on the northeast quarter of section 23, known as the Will Porter Farm. The defendants Schroeder, Fisher, and Salzman comprised the directors and members of the board. The defendant, Deitmier was acting clerk of the board, and Raveling the treasurer of the district, respectively. All were present at such special meeting.

The proceedings at such meeting are best disclosed by the minutes of the board shown by exhibit ".A," as follows:

Clerks Record of Proceedings of the School Board of Special Meeting, School District No. 12, County of Barnes, State of North Dakota. September 15th. Meeting held, Henry Deitmier, Clerk, A. D. 1914. Present: All members.

The committee, which consisted of Mrs. F. Montgomery, Mrs. Geo. Stillman, Mrs. F. C. Schroeder, and Mrs. H. R. Bruns, appeared before the board to ask for a high school to be held at northeast quarter of section 23, known as the Will Porter's Farm.

Motion made by C. A. Fisher, seconded by F. C. Schroeder, who va-

cated the chair to second the motion for the board to go ahead and hire a teacher and pay for same out of the general fund.

John Salzman acted as chairman at the time.

The motion was brought before the board.

On roll call—C. A. Fisher and F. C. Schroeder voted Yes, John Salzman voted No.

Motion was carried by majority.

John Salzman made motion to pay $150 for expenses out of general fund. If parents of children attending said high school pay balance. No second to the motion.

Motion made by C. A. Fisher, second by John Salzman, for children to furnish their own books.

Motion made by C. A. Fisher, second by John Salzman that parents of said children haul fuel, bank up building. No further business. Board adjourned.

Henry Deitmier.

On October 6, 1914, the board held another special meeting, and a petition signed by a majority of the voters of the district demanding an opportunity to vote upon the subject of the establishment of a high school was presented and filed, but such petition was ignored by the board. Notwithstanding such protest a majority of the members of the board proceeded to establish a school in the farmhouse known as the Will Porter house on section 23 aforesaid, and hired a young lady by the name of Miss Smith to teach the same.

It is conceded that there were but three schools in the district at that time, and that board was neither petitioned to call nor did it call a meeting of the voters of the district as provided in §§ 1192, 1184 and 1185 of the Compiled Laws, to determine the question of establishing a high school or another school in said district. The witness Deitmier, who was clerk of the board, among other things, testified in substance that the directors Schroeder and Fisher consulted Miss Nielson, the county superintendent of schools, and all agreed that there should be a high school established. Thereafter Miss Smith was hired as a teacher, and she proceeded to teach the school. This was about October 6, 1914. The witness was requested to give her a contract at certain wages but be declined so to do upon the ground that no taxes had been levied for

the purpose of maintaining a high school. Soon thereafter a majority of the board declared his office vacant.

Such attempted removal of Deitmier as clerk is disclosed in the following minutes of the meeting of the board:

Ex. C. Clerk's Record of Proceedings of the School Board of ――――
   School District No. 12, County of Barnes, State of North Dakota.
   Special meeting held, Henry Deitmier's, November 2, A. D. 1914.
   Present: All members.
   Special meeting was held November 2, 1914.

The meeting was called to order by F. C. Schroeder, and was for the purpose of issuing an order for the high school teacher, Miss E. Smith. The clerk refused to issue the order, whereupon C. A. Fisher moved to declare the clerk's office vacant. No second to the motion. C. A. Fisher further made a motion to appoint H. R. Bruns to fill the vacancy. F. C. Schroeder vacated the chair to second the motion. John Salzman took the chair as the motion was brought before the board in this form.

All in favor of H. R. Bruns being appointed as clerk, manifest by saying I! Whereupon C. A. Fisher and F. C. Schroeder voted I. There was no contrary vote.

The clerk refused to turn over the books on the ground that it was not legal to issue a warrant to the said high school teacher, as there was no money levied for that purpose.

No further business, and board adjourned to take further steps in the business.

                                        Henry Deitmier, Clerk.


Miss Smith conducted school at the Stillman residence for a brief period and afterwards at the Porter farmhouse, as stated in the record. Defendant Fisher testified, among other things, that the board hired a teacher and furnished the fuel for heating the building, and that it kept the school and maintained it under the direction of said teacher from October 15, 1914, until the time of the trial, and that the board agreed to pay the teacher for her services from the funds of the district. The witness, Miss Smith, testified on behalf of the defendants as follows: "I taught two weeks in the Stillman house and then the school was moved to the Porter house. I had eight pupils in attendance. They ranged from

thirteen to eighteen years of age. I was hired to teach arithmetic, civics, spelling, United States history, algebra, geometry, ancient history, German I. and II, and English I. and II. These subjects are taught in the high school. I also have one pupil taking studies in the eighth grade now. There were three taking eighth grade work when I began, but the others have finished. Algebra, geometry, ancient history, German I. and II. and English I. and II. were not in the regular eighth grade course. They are first and second year high school work."

As before stated this action is based upon the alleged ground that the defendants had established, and are maintaining, a high school or extra school in the district at the expense thereof, and without first complying with the statute in reference thereto, there being but three schools in the district, and no petition had been presented for the calling of an election, and no opportunity had been given the voters upon the question of establishing another school or a high school in the district.

The trial court made findings of fact and conclusions of law favorable to the defendants, holding that the proceedings of the board were in all things lawful, and it entered judgment in defendants' favor. From such judgment this appeal is prosecuted.

The issues are clearly defined and not difficult of solution. The fact that a new school of some kind was established in the fall of 1914 and that a teacher was employed therefor is unquestioned. It is also a conceded fact that prior thereto but three schools had been maintained therein, and, further, that the question of establishing such new school was never submitted to the voters of the district, although the board was petitioned so to do, and in fact a majority of the electors filed with the board a protest against its acts in establishing and maintaining such additional school without first submitting the question to a vote of the electors of the district.

Did the board in fact establish, or attempt to establish, either a high school for the district as alleged by the plaintiffs, or an additional common school therein? As we read and understand the record before us we are constrained to differ from the views of the learned trial judge, and to hold that the clear preponderance of the evidence sustains the allegations of the complaint. Whether a high school was in fact intended by a majority of the directors to be established is not, for reasons hereafter stated, of controlling importance to our decision, but we

are nevertheless agreed that such was clearly the intention of the board as disclosed by the evidence. Indeed we are unable to construe the testimony in any other light. The minutes of the proceedings of the board meetings, which were put in evidence, as well as the oral testimony of the clerk of the board and several others, including the testimony of Miss Smith, the teacher employed, all tend to support plaintiffs' contentions. The minutes of the various meetings of the boards with reference to this matter are shown by exhibits A, B, C, and D, Exhibit A is as follows: "September 15, meeting held at Henry Deitmier's, clerk, A. D. 1914. Present: all members. The committee, which consisted of the Mesdames Montgomery, Stillman, Schroeder, and Bruns, appeared before the board to ask for a high school to be held on the N. E. ¼ of section 23, known as the Will Porter farm. Motion made by Fisher, seconded by Schroeder, who vacated the chair to second the motion for board to go ahead and hire a teacher and pay for same out of the general fund. Motion was carried by majority. Salzman made motion to pay $150 for expense out of the general fund, if parents of children attending said high school pay balance. No second to the motion."

Exhibit "B." "Special meeting held at Henry Deitmier's, October 6th, A. D. 1914. Present: all members. There was a protest presented to the school board by a majority of the voters of school district No. 12, who demanded a voice in the high school question. The board would not grant the request. No further business. The board adjourned. Signed, Henry Deitmier, Clerk."

Exhibit "C" has already been quoted.

Exhibit D is the protest against the high school and the petition asking the board to submit the question to a vote of the electors of the district. It bears the names of thirty-four persons. Plaintiff John Kretchmer testified: "I am a farmer and live in Weimer township, married; I live with my family, have been a county commissioner of Barnes county for the past two years. I have school children residing at my home. I live in district No. 12. The school board has undertaken to establish and operate a high school in the district. I have heard the testimony of Deitmier with respect to attendance and the accommodation, and the facts as stated by him are true. I never heard any complaint of lack of accommodation in the schools we already had."

Plaintiff Carl Newman testified: "I am a farmer and live with my family in district No. 12, Noltimier township, where I have lived for eleven or twelve years. I have children of school age residing at home with me. I talked with the defendants Fisher, Salzman, and others about this proposed high school. I said it was not fair to establish the high school and levy a tax on the taxpayers for it. They called it a high school Mr. Fisher told me that himself. That is all it was called. I talked to John Salzman. I told him we wanted to have a vote by the people on the question of whether we should have a high school or not. It was called a high school in that conversation. Salzman, Fisher, Schroeder, Bruns, and others were there. We told them it was not fair because we should have a vote. They should give the people a chance to vote on it. I mean the question of whether we should have a high school or not."

Defendant Raveling, treasurer of the district, testified: "I am a farmer living with my family on a farm in district No. 12, in Noltimier township, and am the treasurer of the school board of district No. 12. I was present at a meeting of said school board held November 2, 1914, held to undertake to remove Mr. Deitmier, the clerk. Mr. Schroeder, president of the board, stated the object of the meeting was that the clerk had refused to issue an order for the high school teacher so she could draw her pay from the treasurer. The meeting was for the purpose of having the board insist on said clerk drawing such warrant to pay the high school teacher."

Defendant Salzman testified: "I was at the meeting when Mrs. Montgomery and the other ladies appeared before the board and asked for a high school. I objected to the district paying for the high school, and I would not at first take the chair. Mr. Bruns made me act as chairman in order to bring the motion before the house, where it would be carried, and so that the district should carry all the expense of the school. I was against them. I says we will try and find out first whether we have a legal right to establish a high school, etc.

"Some of the directors called Miss Nielson, the school superintendent, out there, and we discussed the high school question there until about midnight, and I said I would not take the responsibility, but if the majority of the people were in favor of it I would be. As long as the majority of the people had nothing to say to it, I would not take the

responsibility, and Miss Nielson was there and we talked the matter over and over again, and Miss Nielson said, 'Yes, we could have a high school and she said she would take the matter on her own shoulders.'

"The first time I heard them talking it was always about a high school. Never anything else but the high school, and up until that time Miss Nielson was there, and she and Mr. Deitmier had quite an argument at that meeting. Miss Nielson said they could proceed to establish this school under the guise of a school to teach other grades.

"They were going to teach German for one thing. I heard Miss Nielson ordered to get the German books for them."

From the foregoing, as well as other testimony of like effect in the record, we see no alternative but to hold that the facts are contrary to the findings of the trial court on this point. In arriving at this conclusion we have not overlooked the contention of defendants as made in their answer and the proof in support thereof. In such answer they negative an intention to establish a high school and they allege that "wherever the word 'high school' may be used or spoken of in the minutes of the said board, that the same was figuratively used, and without any intention of using the same as alleged in plaintiff's said complaint, and the only object that the said defendants sought to accomplish was the hiring of an additional teacher, who was able to teach eighth grade work and additional subjects of a higher grade, and which are ordinarily taught in the first year high school work," etc.

Such contention does not impress us with much force, nor do we deem the proof sufficient to sustain the allegations in the face of the showing to the contrary. In the light of the facts as found by us, it follows that the injunction prayed for should have been granted, for the statute (§ 1192, Comp. Laws, 1913) which is the exclusive source of the board's powers, is plain that a high school cannot be established in a district containing less than four schools, nor without the board first receiving authority therefor by a vote of the electors of the district.

But we should be obliged to reach the same conclusion even if such new school was not intended to be a high school, and this for the following reasons: Under our statute the school board is not given a free hand to arbitrarily locate, establish, and maintain new schools at its sole discretion, but it must act in the matter "as provided by law." The language contained in § 1174, Compiled Laws, which grants power to

the board to conveniently locate, organize, and maintain schools, is qualified by the words "as provided by law," and this section must be construed together with § 1184, which reads: "That whenever in the judgment of the board it is desirable or necessary to the welfare of the schools in the district, or to provide for the children therein, proper school privileges, etc., the board shall call an election of the voters in the district at some convenient time and place fixed by the board to vote upon the question" involved.

It follows that the school located and established in the Stillman, and later in the Porter, house, which concededly was thus located and established without a previous vote of the district, was in defiance of the plain mandate of the statute, and without authority on the part of the school board, and it should therefore have been enjoined as prayed for in the complaint. It is an elementary and well-established rule that school district officers have and may exercise only such powers. as are expressly or impliedly granted by statute. Capital Bank v. School Dist. 6 Dak. 248, 42 N. W. 774; Farmers' & M. Nat. Bank v. School Dist. 6 Dak. 255, 42 N. W. 767; 35 Cyc. 849, 925.

"Where the question of the creation of a district high school is by the statute to be submitted to the voters in the territory which is to be affected, such statute is mandatory, and must be followed to effect a legal establishment of a district high school." Ping v. Keith, 150 Ky. 452, 150 S. W. 523.

A court of equity will, in a proper case and on the suit of an interested taxpayer, enjoin illegal or unauthorized acts on the part of the school board in the matter of the organization of new schools or the creation or increase of the district's indebtedness or unlawful payment. or application of the school funds. 35 Cyc. 1050.

For the foregoing reasons the judgment must be reversed and a judgment entered in plaintiff's favor for the relief prayed for. It is so ordered.

CHRISTIANSON, J. dissenting. I am unable to agree with the conclusions reached by my associates in this case. I have no particular complaint to make of the propositions of law announced in the majority opinion, but I do not believe that they are applicable to the facts in this case. Plaintiffs brought this action on the theory that "defendants

have attempted to organize, establish, and conduct a district high school" without complying with the provisions of § 1192, Compiled Laws 1913, which reads: "In any district containing four or more schools, and having an enumeration of sixty or more persons of school age residing therein the board may call, and if petitioned so to do by ten or more voters in the district, shall call a meeting of the voters of such district, in the manner prescribed in § 1185 to determine the question of establishing a district high school. If a majority of the voters at such meeting vote in favor of establishing such high school, the meeting shall further proceed to select a site therefor, and to provide for the erection or purchase of a school building or for the necessary addition to some school building therefor. Thereupon the board shall erect or purchase a building or make such addition for such high school, as shall be determined at such meeting and shall establish therein a district high school containing one or more departments, and employ teachers therefor."

Defendants concede that the provisions of this section were not complied with, but they positively deny any intention to establish or conduct a high school. The issues were framed, and the trial had in the court below, proceeded upon the theory that the sole and controlling question to be determined in this action was whether the defendants sought to establish and conduct a high school, and plaintiffs' action must stand or fall upon the answer to this question. If defendants sought to establish and conduct such high school, plaintiffs should prevail, if they did not, defendants should prevail.

The trial judge, who saw the witnesses and heard their testimony as it fell from their lips, found (and in my opinion his findings are correct) that the defendants neither established nor attempted to establish such high school.

The testimony shows that certain pupils in the school district were so far advanced that it was desirable that they receive instruction in certain advanced subjects, and some of the residents of the district took this matter up with the school board, with the result that the county superintendent of public instruction was called in to confer with the school board in regard to the matter.

She testified in part as follows:

Q. At that time, what was your mission before the board?

A. They called me out to interpret the law, whether they had a right to hire another teacher and to teach a part of the eighth grade subjects and other higher branches.

Q. And now, did you then consent to their going ahead and hiring a teacher, and in teaching of such grades or additional subjects in that district?

A. I did.

Two members of the school board voted in favor of engaging an additional teacher to teach such advanced subjects. Mr. Salzman, the third member of the board, voted against the proposition. He testified upon the trial in part as follows:

Q. Now, Mr. Salzman, you say Miss Nielson also told you that, in the presence of the members of the board, or the board of this district, that she thought you had the right to go ahead and teach these additional subjects, or grades, as you put it?

A. Yes.

Q. You say she didn't call it a high school?

A. No, she didn't, herself.

The state Constitution provided for the establishment and maintenance of a system of public schools (Const. §§ 147-152), and created the offices of state superintendent of public instruction (Const. § 82) and county superintendent of schools (Const. § 150). The legislature, in compliance with the constitutional mandate, enacted laws for the establishment and maintenance of such public schools, and prescribed the duties of the state and county superintendents of public instruction. The legislature provided for the organization of common school districts as public corporations (Comp. Laws 1913, §§ 1140 et seq.) and for the government of such corporations. It provided that the governing body of a common-school district should consist of three directors, and conferred upon such school directors certain powers and duties, the execution of which requires the exercise of judgment and discretion. Among other things the legislature said: "The district school board shall have the general charge, direction and management of the

schools of the district, and the care, custody and control of all the property belonging to it, subject to the provisions of this chapter. . . ." Comp. Laws 1913, § 1173.

The school board "shall organize, maintain, and conveniently locate schools for the education of children, of school age within the district, and change or discontinue any of them as provided by law." Comp. Laws 1913, § 1174.

That such board "shall make all necessary repairs to schoolhouses, outbuildings and appurtenances, and shall furnish fuel and all necessary supplies for the schools and provide for janitor service." Comp. Laws 1913, § 1175.

That such board "shall, with the approval of the county superintendent of schools, furnish to each school all necessary and suitable furniture, maps, charts, globes, blackboards, and other school apparatus . . . [and] shall appropriate and expend each year not less than $10 nor more than $25 for each school of the district for the purpose of school library. . . ." Comp. Laws 1913, § 1176.

That such board "shall have the care and custody of the library and may appoint as librarian any suitable person, including one of their number . . . and shall make rules to govern the circulation and care of the books." Comp. Laws 1913, § 1177.

That such board "shall employ the teachers of the school district and may dismiss a teacher at any time for plain violation of contract, gross immorality or flagrant neglect of duty." Comp. Laws 1913, § 1178.

The board is also given the power to prescribe regulations for the admission of pupils; to "assist and co-operate with the teachers in the government and discipline of the schools, and may make proper rules and regulations therefor [and] . . . may suspend or expel . . . [for certain periods of time] any pupil who is insubordinate or habitually disobedient." Comp. Laws 1913, §§ 1179, 1180.

That such board *subject to the approval of the county superintendent, . . . shall have [the] power to determine what branches, if any, in addition to those required by law shall be taught in any school in the district."* Comp. Laws 1913, § 1181.

So far as the record discloses, the school board had ample funds, available for the purpose of paying the salary of the additional teacher. It must be conceded that the school board had full authority to engage

teachers, and also, upon approval of the county superintendent, had power to require branches, in addition to those required by law, to be taught in any school of the district. Comp. Laws 1913, §§ 1173, 1181. The determination by these administrative officers of these questions (except possibly in unusual cases) is not subject to review or control by the courts in an equitable action. The board certainly had authority to engage whatever teachers were necessary to carry on the educational work of the district and also to require instruction to be given in the additional branches specified by this board. If the school board had engaged an additional teacher and placed her in one of the other schoolhouses in the district, and required her to teach the subjects under consideration, then the board would clearly have been within the letter of the law. But as a matter of convenience, and probably in order to avoid confusion and interference with the work carried on in such schoolhouses, and purely as a temporary arrangement, such school was conducted in a farmhouse, the use of which was given to the school without compensation. No complaint is made by any person whose children are required to attend school in such farmhouse; such persons are entirely satisfied with the arrangement. The plaintiffs base their right to be heard on the ground that they are taxpayers of the district, and contend that the moneys sought to be expended by the board in payment of the teacher's salary would constitute an illegal expenditure of public funds, and as such should be enjoined by a court of equity in a taxpayer's suit.

It is true, as suggested in the majority opinion, the law requires that the voters of the district be permitted "to vote upon the question of the selection, purchase, exchange or sale of a schoolhouse site, of the erection, removal or sale of a schoolhouse." Comp. Laws 1913, § 1184. That question, however, is not presented by the pleadings herein, but this action is based solely upon the theory that the defendants have sought to establish a high school without complying with the statutory provisions relating to the establishment of a high school. But even if this question was presented, it seems clear to me that there is nothing to justify the conclusion that defendants have sought to perform any of the acts or exercise any of the powers which this section requires to be performed or exercised by the voters of the district. The record negatives any intention on the part of the school board to select or pur-

chase a schoolhouse site, or erect or remove a schoolhouse. The farmhouse was vacant, and permission was granted to use it during the particular school year. Assuming that one of the schoolhouses of the district had been destroyed by fire and the school board had obtained permission to temporarily utilize this same building until a new schoolhouse was erected, would it be contended that such act on the part of the school board constituted a violation of law or an attempt on their part to select or purchase a schoolhouse site? The answer seems obvious. In principle I can see no difference between the case supposed and the case at bar. In this case the school board merely obtained temporary use of the building in question. Everything indicates that the arrangement was purely temporary. In fact there is no contention on the part of the plaintiffs that a permanent arrangement was intended.

It is true that the records of the school clerk (who was bitterly opposed to the engagement of the additional teacher) designate the school conducted in the farmhouse as a "high school," and some of the witnesses testify that this term was used in the proceedings had by the school board. This, however, has little or no tendency to prove that defendants intended to establish a high school within the contemplation of § 1192, Compiled Laws. I believe that the term "high school" was used purely in a colloquial sense, to indicate that certain "higher" subjects would be taught therein. In this connection it may be mentioned that one of the witnesses for the plaitiffs testified that certain pupils in the district who had been attending "college" at Valley City returned to the district and received instruction in the high school. The testimony does not show what particular educational institution in Valley City such pupil or pupils attended, but it is indicative of the sense in which the terms "high school" and "college" were used by the witnesses. I believe that the trial judge correctly found that the defendants did not establish, or attempt to establish, a high school, and if this finding is correct plaintiffs' cause of action falls. In my opinion the judgment should be affirmed. I am authorized to say that Mr. Justice Bruce concurs in the foregoing dissent.