SLAGLE & COMPANY et al, Respondents, v. ELK POINT INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 3 OF UNION COUNTY, Appellant.

(Six Cases.)

(166 N. W. 234.)

(File Nos. 4202, 4203, 4204, 4205, 4206, 4207.    Opinion filed February 5, 1918.)

1. **Estoppel — Construction of School Building — Materialmen's Claims, Suits For—Bond for Payment for Material, Etc., Failure of School District to Procure, Effect—Statute Construed.**

Where a school district, successor to an original district, which latter contracted for construction of a high school building which it had authority to erect, assumed control of the unfinished building so contracted for, and has since used it for a lawful purpose, held, that it is estopped to deny liability under Laws 1909, Ch. 245, Sec. 2, making such corporation liable for materials furnished, if it shall fail or neglect to require bond from contractor as provided by Sec. 1, conditioned for payment for all labor and material which may enter into construction of the building; said statute creating a liability distinct from any liability of the district which might arise under a valid contract; and it was not incumbent upon plaintiff's materialmen, at their peril, to ascertain and determine whether all legal proceedings necessary to rendering contract valid and binding between the school corporation and the contractor, had been complied with by such corporation; nor will the fact that the school building was designated "the

high school building" in the original contract, or that the district had no authority to organize a high school, be material.

2.   Damages—Construction of School Building—Materialmen's Statutory Claims—Measure of Damages, Materials, Reasonable Value of, Statute as Measure—Agreement, Effect on Value, Price.

The liability created by a valid contract for erection of a public school building is not dependent upon it, and is measured in terms of the statute itself as the reasonable value of material or of labor entering into the building; which value might be limited by express agreement of materialmen or laborers, as to price to be paid, which agreement would be competent evidence tending to show such reasonable value.

3.   Municipal Corporations—School District—Construction of School Building—Liability to Materialmen—Use of Building—Ultra Vires Contract, Whether Defense.

The doctrine of ultra vires does not absolve municipal corporations from the principles of common honesty; and neither party will be heard to allege invalidity of a transaction which is simply ultra vires, while holding the fruits thereof.  So held, in a suit by materialmen for price of materials furnished in construction of a high school building which the school district was authorized to construct, which building had been occupied and used by it for lawful purposes.

Appeal from Circuit Court, Union County.   Hon. JOSEPH W. JONES, Judge.

Action by F. M. Slagle and Company, and others, against the Elk Point Independent Consolidated School District No. 3 of Union County, to recover for value of materials furnished by plaintiffs to contractors of defendant school district.   From judgments for plaintiffs, and from orders denying new trials, defendant appeals.   Judgment affirmed in each case.

*Charles Stickney,* and *Cherry & Abbot;* for Appellant.

*Marks & Marks, Gantt & Ellis, C. L. Joy,* and *Geo. H. Blivens,* for Respondent.

(1)   To point one of the opinion, Appellant cited:   Kettle River Quarries Co. v. City of East Grand Forks, (Minn.) 104 N. W. 1077; Stovell v. Neal, (Cal.) 27 Pac. 192; Kellogg v. Howes, (Cal.) 22 Pac. 509; Williamette Steam Mills Co. v. Los Angeles College Co., 29 Pac. 629; Rebman v. San Gabriel Land & Water Co., 30 Pac. 564; Black v. Board Commissioners (Minn.) 107 N. W. 560; Laws 1907, ch. 135, Secs. 81, 121; Farmers, etc.,

Nat. Bnk. v. School District No. 53, 6 Dak. 225; 42 N. W. 767.

Respondents cited: Plumbing Supply Co. v. Board of Education of Independent School District of the City of Canton et al., (S. D. 142 N. W., 260; Handelan v. Smee School District No. 4 of Wakpala, (S. D.), 159 N. W. 888; Laws 1909, ch. 245; Laws 1907, ch. 138; McMullen Lumber Company v. Village of Pine Island (Minn.), 137 N. W. R., 192; Rounds v. Whatcom County (Wash.), 60 Pacific, 139; Northwest Steel Co. v. School District No. 16, 148 Pac., 1134; L. R. A., 1915 F. 629; and re estoppel, cited; National Tube Works v. City of Chamberlain (S. D.), 37 N. W., 761; McGuire v. City of Rapid City (S. D.), 43 N. W. 706.

SMITH, J. Six distinct actions were begun in the circuit court of Union county against appellant school district by various persons who had furnished labor or materials for the construction of a school building now occupied by the defendant. The defenses interposed by the district were substantially the same in all the actions. Plaintiffs in the several actions having prevailed in the trial court, the defendant took a separate appeal in each case. The appeals were consolidated by an order of this court; the propositions relied upon by the appellant being substantially the same in each case. Counsel for appellant and for the several respondents have filed briefs presenting various views and discussions of the facts and legal questions involved. The following we deem to be the material facts:

On April 27, 1914, school district No. 3 of Union county, embracing the city of Elk Point, entered into a contract with the Merten Construction Company, of Sioux City, Iowa, for the erection of a high school building. Early in May, 1914, the contractors began work upon the building, and continued until about the middle of December, 1914, during which time the work, labor, and materials involved in the various actions were furnished to the contractors by the different parties plaintiff. While the work was in progress, and on November 4, 1914, school district No. 3 of Union county was attempted to be organized, with its then existing boundaries, as Elk Point independent consolidated school district No. 3 of Union county. About the middle of December, 1914, the contractors abandoned the work. After such aban-

donment the work was taken over by the new district and, under the control and direction of its officers the building was completed about September 1, 1915. Shortly thereafter the school building was, and has ever since been, occupied by the district for school purposes. Neither the officers of the original district nor those of the reorganized district ever took or demanded from the contractors the bond required by section 1 of chapter 245, Session Laws of 1909, which makes it the duty of such corporations to require contractors to furnish a bond, in at least the amount of the contract price, conditioned for the payment of all labor and material which may enter into the construction of the building. The several actions are founded on section 2 of that act, which provides that:

"In case any such corporation shall fail or neglect to require the bond to be given as provided in section 1," then the "corporation shall be liable to pay any person, firm, corporation, or association who shall have performed labor or furnished any material that" may enter "into the erection * * * of said building the value of such work or material, and an action may be maintained therefor."

[1, 2] This statute creates a liability entirely distinct from any liability of the district which might arise under a valid contract. It was enacted solely for the protection of laborers and materialmen who may have been induced by reason of a supposedly valid contract between the corporation and contractor to furnish labor and material. It is not incumbent upon such persons at their peril to ascertain and determine whether all technical legal proceedings have been complied with by the corporation which may have been necessary to render the contract valid and binding between the corporation and the contractor. Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621; Hambach v. Ward, 69 Wash. 351, 125 Pac. 140. If the corporation possessed the power to contract for the erection of the building and proceeded to exercise it, the statute protects such persons, regardless of the technical invalidity of the contract. We are not called upon to determine whether the statutory liability would attach where the corporation was absolutely without authority under any conditions to undertake the erection of such building, or had never appropriated the building

to uses for which the same might have been lawfully provided. In this case the district had authority to erect a building for school purposes, and assumed control of the unfinished building and of the materials sued for which were used in its construction, received the benefit of labor performed, and completed and have since utilized the building for a lawful purpose. If the corporation was wholly and originally without power or authority to make any expenditure of public money for the particular purpose by reason of constitutional limitations or otherwise, a different question would arise—one which we are not called upon to consider at this time. Such was the case of Kettle River Quarries Co. v. City of East Grand Forks, 96 Minn. 290, 104 N. W. 1077. In that case the contract was wholly void for want of power, and not by reason of an irregular exercise of power. These facts and the fact that any resident taxpayer of the district might have enjoined the school officers and the contractors from a proceeding under an alleged contract void in its inception should be held to estop the school corporation from denying the validity of the contract for the purpose of defeating a liability under the statute. Appellant contends that the original school district, not having authority to maintain a high school, was without authority to construct a "high school" building—so designated in the contract. The authority of the school corporation to erect school buildings of such kind as would accommodate public needs is undoubted, by whatever name such building may be designated. Whether the corporation had authority to establish and maintain a high school, as defined by the school law, in such building, is an entirely distinct matter with which materialmen and laborers need not concern themselves. The case of Kretchmer v. School Board, 34 N. D. 403, 158 N. W. 993, which is largely relied upon by appellant, was an action to enjoin the establishment and maintenance of a high school, and might be in point were this an action by a taxpayer of the school district to enjoin the maintenance of a high school pursuant to an unauthorized and illegal contract.

[3]   Application of the doctrine of estoppel is sustained by the following cases: Fransioli v. Thompson, 55 Wash. 259, 104 Pac. 278; Hambach v. Ward, 69 Wash. 351, 125 Pac. 140; Plumbing Supply Co. v. Board of Education, 32 S. D. 270, 142 N. W. 1131; Handelan v. Smee School District, 38 S. D. 29, 159 N. W.

888.   The liability created by a valid contract is not dependent upon it, and is measured in terms of the statute itself as the reasonable value of the material or labor which enters into the building.   Such value might be limited by an express agreement of the materialmen, or laborers, as to the price to be paid for either, which would at least be competent evidence tending to show the reasonable value of such labor or material.   Lumber Co. v. Schmitt, 74 Cal. 625, 16 Pac. 516.   Appellant's counsel cite cases holding that a municipal corporation may not be estopped from pleading the defense of ultra vires.   The case of Norbeck & Nicholson Co. v. State, 32 S. D. 189, 143 N. W. 847, Ann. Cas. 1916A, 229, sufficiently points out the classes of cases in which that doctrine applies, and this case is not within any of them.   As said by Justice Mitchell in Bass Foundry, etc., v. Board of Com'r. 115 Ind. 234, 17 N. E. 593, "the doctrine of ultra vires does not absolve municipal corporations from the principles of common honesty." In Municipal Security Co. v. Baker County, 39 Or. 396, 65 Pac. 369, the court approving this statement holds that "neither party will be heard to allege the invalidity of a transaction which is simply ultra vires, while holding the fruits thereof."   The limitations upon this statement of the rule are indicated in Norbeck & Nicholson Co. Case, supra.

We deem it unnecessary to discuss the sufficiency or competency of the evidence to sustain the findings of the court, or the validity of the contract; nor is it necessary to consider any question as to regularity of the proceedings had in the change of organization of the original school district.   It was clearly competent for the Legislature to cure any such irregularities, and they have done so by chapters 2 and 3, Laws 1915.

The judgment, in each of the cases, will be affirmed.